fUNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

AVI & CO NY CORP.,                                         :

                  Plaintiff,                         :

       -against-                                     :        Case No. 22-cv-10599 (PAE)

CHANNELADVISOR CORPORATION,          :

                 Defendant.                        :

----------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CHANNELADVISOR CORPORATION'S MOTION TO TRANSFER VENUE

# **INDEX**

TABLE OF AUTHORITIES...........................................................................................iii

INTRODUCTION....................................................................................................1

FACTS RELEVANT TO THE MOTION....................................................................... 1

PROCEDURAL HISTORY ...................................................................................... 4

ARGUMENT ....................................................................................................... 6

    A.  The Applicable Standard .............................................................................. 6

    B.  The Forum Selection Clause is Valid and Requires Transfer to the
        Eastern District of North Carolina ...................................................... 8

        1.  The Forum Selection Clause Was Reasonably Communicated to
            Plaintiff..........................................................................................8

        2.  The Forum Selection Clause is Mandatory......................................11

        3.  The Forum Selection Clause Encompasses This Action.....................12

        4.  The Forum Selection Clause is Not Unreasonable, Unjust, or
            Invalid..........................................................................................15

    C.  Public Interest Considerations Do Not Outweigh the Enforceability of the
        Forum Selection Clause.......................................................................16

    D.  The Private Interest Factors Also Weigh in Favor of Transfer. ...............17

CONCLUSION.................................................................................................... 20

CERTIFICATE OF SERVICE ................................................................................. 22

## <u>TABLE OF AUTHORITIES</u>

*Asoma Corp. v. SK Shipping Co.,*
  467 F. 3d 817 (2d Cir. 2006) ................................................................ 15

*Ainsley Skin Care of NY v. Elizabeth Grady Face First, Inc.,*
  1997 U.S. Dist. LEXIS 19102 (S.D.N.Y. Dec. 1, 1997) ............................ 9

*Atl. Marine Constr. Co. v. U.S. Dist. Court,*
  571 U.S. 49 (2013)................................................................ 8, 17

*Bent v. Zounds Hearing Franchising, LLC,*
  2015 U.S. Dist. LEXIS 160573 (S.D.N.Y. Nov. 30, 2015).............................. *passim*

*Bluefire Wireless, Inc. v. Cloud9 Mobile Communs., Ltd.,*
  2009 U.S. Dist. LEXIS 119009 (S.D.N.Y. Dec. 21, 2009) ....................... 15

*Collins & Aikman Prods. Co. v. Building Sys., Inc.,*
  58 F. 3d 16 (2d Cir. 1995) ................................................ 12

*Encompass Aviation, LLC v. Surf Air, Inc.,*
  2018 U.S. Dist. LEXIS 205596 (S.D.N.Y. Nov. 29, 2018)................................ 17, 18

*Enigma Software Grp. USA, LLC v. Malwarebytes Inc.,*
  260 F. Supp. 3d 401 (S.D.N.Y. 2017)............................................... 6, 7, 20

*Giordono v. UBS, AG,*
  134 F. Supp. 3d 697 (S.D.N.Y. 2015)....................................... 9

*GlaxoSmithKline LLC v. Laclede, Inc.,*
  2019 U.S. Dist. LEXIS 10952, (S.D.N.Y. Jan. 23, 2019) ....................... 14

*Glob. Art Exhibitions, Inc. v. Kuhn & Bülow Italia Versicherungsmakler GmbH,
Ergo Versicherungs AG,*
  2022 U.S. Dist. LEXIS 107069 (S.D.N.Y. June 15, 2022) ...................... 16

*Horvath v. Banco Comercial Portugues, S.A.,*
  461 F. App'x 61 (2d Cir. 2012)................................................. 8

*Scherillo v. Dun & Bradstreet, Inc.,*
  684 F. Supp. 2d 313 (E.D.N.Y. 2010) ....................................... 9

*In re Hapag-Lloyd Aktiengesellschaft,*
  573 F. Supp. 3d 934 (S.D.N.Y. 2021)....................................... 9

*In re LIBOR-Based Fin. Instrs. Antitrust Litig.,*
    2015 U.S. Dist. LEXIS 107225 (S.D.N.Y. Aug. 4, 2015)..................................... 13

*Knowyourmeme.com Network v. Nizri,*
    2021 U.S. Dist. LEXIS 163283 (S.D.N.Y. Aug. 30, 2021)..................................... 14

*Laspata DeCaro Studio Corp. v. Rimona GmbH,*
    2017 U.S. Dist. LEXIS 70017, (S.D.N.Y. May 8, 2017) ......................................... 9

*Mark Grp., Int'l v. Still,*
    151 N.C. App. 565, 566 S.E. 2d 160 (N.C. Ct. App. 2002) .............................. 11, 12

*Martinez v. Bloomberg LP,*
    740 F. 3d 211 (2d Cir. 2014) ......................................................... 8, 11, 15

*Maxwell Foods, LLC v. Smithfield Foods, Inc.,*
    2021 U.S. Dist. LEXIS 74856 (E.D.N.C. Feb. 22, 2021)..................................... 11

*Midamines SPRL Ltd. V. KBC Bank NV,*
    2014 U.S. Dist. LEXIS 37731 (S.D.N.Y. Mar. 18, 2014) ................................... 8, 16

*Novak v. Tucows, Inc.,*
    2007 U.S. Dist. LEXIS 21269 (E.D.N.Y. Mar. 26, 2007) ..................................... 14

*Pence v. Gee Grp., Inc.,*
    236 F. Supp. 3d. 843 (S.D.N.Y. 2017)............................................... 18, 19

*Placek v. Shopoff,*
    2018 U.S. Dist. LEXIS 163239 (S.D.N.Y. Sept. 24, 2018)..................................... 19

*SingularDTV GmbH v. LeBeau,*
    2022 U.S. Dist. LEXIS 185815 (S.D.N.Y. Oct. 11, 2022)..................................... 13

*Speedfit LLC v. Woodway USA, Inc.,*
    2022 U.S. Dist. LEXIS 211862 (S.D.N.Y. Nov. 22, 2022)..................................... 12

*Talisman Software, Sys. & Servs., Inc. v. Atkins,*
    2016 NCBC LEXIS 1 (N.C. Bus. Ct. Jan. 4, 2016) .......................................... 11, 12

*Tianhai Lace USA, Inc. v. Forever 21, Inc.,*
    2017 U.S. Dist. LEXIS 168187 (S.D.N.Y. Sept. 27, 2017)..................................... 18

*Tlapanco v. Elges,*
    207 F. Supp. 3d 324 (S.D.N.Y. 2016).............................................. 18, 19

iv

*Windserve Marine, LLC V. US Workboats, LLC,*
  2021 U.S. Dist. LEXIS 234109 (E.D.N.Y. Apr. 1, 2021) ........................................ 17

*Zurich Ins. Co. v. Prime, Inc.,*
  419 F. Supp. 2d 384 (S.D.N.Y. 2005) ..................................................................... 15

**Statutes and Other Authorities**

28 U.S.C.§ 113(a) ................................................................................................. 6, 18

28 U.S.C.§ 1391 ....................................................................................................... 18

28 U.S.C.§ 1404(a) ........................................................................................ 1, 6, 7, 18

# I.     INTRODUCTION

Pursuant to Local Civil Rule 7.1(a)(2), defendant ChannelAdvisor Corporation ("ChannelAdvisor") respectfully submits this memorandum of law in support of its motion (the "Motion") to transfer this case to the Eastern District of North Carolina, Western Division, pursuant to 28 U.S.C. § 1404(a).  Plaintiff Avi & Co NY Corp. ("Avi" or "Plaintiff") filed this action in the Supreme Court of New York, New York County, to enforce a contract which provides for the exclusive jurisdiction of the courts located in Wake County, North Carolina in any suit arising from or relating to that contract. The parties' forum-selection is enforceable and there are no public interests which outweigh the private agreement for this matter to be adjudicated in Wake County, North Carolina.  Accordingly, this Court should grant the motion to transfer venue this action to the Eastern District of North Carolina, Western Division.

# II.    FACTS RELEVANT TO THE MOTION

Plaintiff is a jewelry company which designs and sells diamond jewelry and luxury watches.  *See* Compl. ¶ 10.  ChannelAdvisor is an e-commerce software-as-a-service company whose software platform facilitates retailers in marketing and selling their products through online platforms.  *See* Declaration of Richard Cornetta filed herewith ("Cornetta Decl.") at ¶ 3.

On or about 29 January 2019, Plaintiff and ChannelAdvisor contracted for ChannelAdvisor to provide certain services and software functionality and licenses to Plaintiff in exchange for a fee.  *Id.* ¶¶ 6-11.  The contract between ChannelAdvisor and Avi was comprised of a Master Services Agreement and Statements of Work that

specified the services and software platforms that Avi contracted to use. Specifically, the parties signed (i) a "Statement of Work for Digital Marketing" in which, among other terms, ChannelAdvisor agreed to manage ChannelAdvisor's digital marketing module on Plaintiff's behalf for a period of twelve months; (ii) a "Statement of Work for Managed Marketplaces" in which, among other terms, ChannelAdvisor agreed to manage ChannelAdvisor's marketplaces module on Plaintiff's behalf for a period of twelve months. *Id.* ¶ 7-8 & Ex. A - B.

The Statements of Work signed by the parties were incorporated into the Master Services Agreement. *Id.* at Ex A, Ex. B. By signing each Statement of Work, Plaintiff expressly agreed to the terms of the Master Services Agreement, and agreed to be bound by any revisions to the Master Services Agreement made before any renewal of the parties' contract. Specifically, each Statement of Work states:

> THIS STATEMENT OF WORK is made and entered . . . by and between ChannelAdvisor Corporation, a Delaware corporation, with offices at 3025 Carrington Mill Boulevard, Suite 500, Morrisville, NC 27560 ("ChannelAdivsor"), and Avi & Co NY Corp., a company formed under the laws of NY, having its principal place of business at 15 West 47th St., Suite 200, New York, NY 10036 ("Customer") and shall be incorporated into the Master Services Agreement ("MSA") agreed to amongst the parties found at http://www.channeladvisor.com/terms. By signing below, Customer acknowledges and agrees that it has read the MSA and agrees to be fully bound to its terms.
>
> *        *        *        *
>
> 3. Term. This SOW shall be effective as of the SOW Effective Date and shall continue for a noncancellable twelve (12) month period ("Initial Term"). Thereafter, this SOW will renew automatically at the end of the Initial Term for successive one-year periods ("Renewal Term(s)") unless either party gives written notice to the other party at least thirty (30) days prior to the expiration of the applicable Term, that it does not wish to auto-renew the SOW. . . . Renewal of this SOW or extension of the then-current Term shall constitute acceptance of the MSA and Services

> description as of the renewal or extension effective date, together with
> any new or changed terms.  Customer shall review the MSA and
> Services description at the time of the renewal or extension for any
> changes or additions.

*Id*. at Ex. A, Ex. B.

The Master Services Agreement ("MSA") has been available to the public on
ChannelAdvisor's website at http://www.channeladvisor.com/terms at all times
relevant to this matter.  *Id*. ¶¶ 11-12.  Among other provisions, the MSA contains a
choice-of-law and forum selection clause.  ChannelAdvisor posted an amended MSA
on its website shortly after it signed the Statements of Work with Avi. From 12
February 2019 to the end of ChannelAdvisor's relationship with Plaintiff, the MSA
stated:

> The laws of the state of North Carolina, without regard to its
> conflicts of laws provisions, govern this Agreement, and each party
> irrevocably and unconditionally consents and submits to the exclusive
> jurisdiction of the applicable courts located in Wake County, North
> Carolina for purposes of any action, suit or proceeding arising out of or
> relating to this Agreement and agrees that service of any process,
> summons, notice or document by registered mail or the equivalent to the
> address stated in the SOW is effective service of process for any action,
> suit or proceeding brought against the party under this Agreement.

*Id*. at Ex. D § 11.3.  The MSA remained available for review on ChannelAdvisor's
website throughout the course of the parties' business relationship.  *Id*. ¶ 12.

Plaintiff and ChannelAdvisor's contractual relationship continued beyond the
initial one-year term, during which period the parties' amended their contract three
times.  *Id*. ¶¶ 13-16 & Ex. E - G.  The parties amended their Statement of Work for
Managed Marketplaces by signing Amendment 1 to Statement of Work Between Avi
& Co NY Corp., and ChannelAdvisor Corporation (dated 5 March 2020), *id*. at Ex. E;

Amendment 2 to Statement of Work Between Avi & Co NY Corp., and ChannelAdvisor Corporation (dated 9 April 2020), *id.* at Ex. F; and Amendment 3 to Statement of Work Between Avi & Co NY Corp., and ChannelAdvisor Corporation (dated 23 July 2020), *id.* at Ex. G.  Each amendment concludes with the following sentence:

> The parties' execution of this Amendment shall constitute acknowledgement and acceptance of the terms of the MSA, together with any new or changed terms, for the remainder of the then-current term.

*Id.* at Ex. E § 3, Ex. F. § 3, Ex. G. § 3.

The software services purchased by Avi were maintained and performed by ChannelAdvisor employees assigned to work at ChannelAdvisor's principal place of business located in Wake County, North Carolina.  *Id.* ¶ 18.   The ChannelAdvisor employees who can address the performance, functionality, and design of ChannelAdvisor's software platforms also work in Wake County, North Carolina.  *Id.* ¶ 19.  The Complaint does not allege any events occurring in New York.  Rather, Plaintiff alleges that ChannelAdvisor flew Plaintiff's representative to North Carolina for a meeting at which ChannelAdvisor made certain "promises" to Plaintiff regarding the nature of its services.  *See* Compl. ¶¶ 13-14.

### III.   PROCEDURAL HISTORY

On 17 November 2022, Plaintiff commenced this action in the Supreme Court of New York, New York County, through the filing of a Summons With Notice.  *See* Dkt. No. 1-1.  In the Summons With Notice, Plaintiff described the nature of its action

as "breach of contract and unjust enrichment" for ChannelAdvisor's alleged failure "to perform under its agreement with Plaintiff." *Id.*

ChannelAdvisor removed the action to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. *See* Dkt. 1. Plaintiff filed its Complaint in this Court on 31 January 2023. *See* Dkt 12. The Complaint generally asserts that ChannelAdvisor's "platform was not working as advertised or promised in [the parties' agreement]." *See* Compl. ¶ 20. For example, Plaintiff alleges that "data mapping was not mapping to the correct platforms with the right information," *id.* ¶ 18; "data feeds were not updating enough," *id.* ¶ 19; the data feed "went only in a specific direction, rather than going in both directions, as intended," *id.* ¶ 21; and that one of the platform's intended functions "routinely and epicly (sic) failed," *id.* ¶ 23.[1] Based on these allegations of substandard performance, Plaintiff advances eight claims for relief: (1) breach of contract, (2) unjust enrichment, (3) deceptive trade practices (violation of New York General Business Law § 349), (4) false advertising (violation of New York General Business Law § 350), (5) breach of express warranty, (6) breach of implied warranty of merchantability, (7) negligent misrepresentation, and (8) fraudulent inducement. *Id.* ¶¶ 28 – 77.

---

[1] Avi used and enjoyed ChannelAdvisor's services for over a year, renewing the contract after its initial 12-month period expired. *See* Cornetta Decl. ¶¶ 13-16 & Ex. E - G. Now Avi claims that it was "reliev[ed]" of its "obligations under the Agreement" (Compl. ¶ 32); the obligation to pay. Thus, Plaintiff's own allegations reveal its motive in bringing this lawsuit is to be excused for failing to pay for services actually rendered.

## IV.    ARGUMENT

The parties agreed to the exclusive jurisdiction of the "applicable courts located in Wake County, North Carolina" for actions such as this one.

Wake County, North Carolina is in the Eastern District of North Carolina. 28 U.S.C. 113(a). Court for the Eastern District of North Carolina is held at several locations, including Raleigh. *Id.* The Raleigh courthouse, which is within the Western Division of the Eastern District of North Carolina, is in Wake County. *See* Declaration of Jeffrey L. Roether filed herewith ("Roether Decl.") at ¶ 2 & Ex. A.

For the reasons that follow, the Court should enforce the forum-selection clause of the parties' agreement and transfer this action to the Eastern District of North Carolina, Western Division.

## A.    The Applicable Standard

A district court may, under appropriate circumstances, transfer "any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Consideration of a motion to transfer venue under Section 1404(a) involves a two-step inquiry. "The Court first must determine whether the action could have been brought in the transferee district. If so, the Court then must determine whether transfer would be an appropriate exercise of the Court's discretion." *Enigma Software Grp. USA, LLC v. Malwarebytes Inc.*, 260 F. Supp. 3d 401, 407 (S.D.N.Y. 2017) (Engelmayer, J.) (citation omitted); *see also Bent v. Zounds Hearing*

*Franchising, LLC*, 2015 U.S. Dist. LEXIS 160573, at *8 (S.D.N.Y. Nov. 30, 2015) (Engelmayer, J.).

Section 1404(a) generally provides district courts "wide latitude" in deciding whether to transfer venue. *Enigma Software Grp.*. 260 F. Supp. 3d at 406 (citation omitted). The Court may consider declarations and other factual submissions of the parties. *Bent*, 2015 U.S. Dist. LEXIS 160573, at *2 n.1. In a typical case, the court evaluates both "the convenience of the parties and the various public-interest considerations" by weighing various factors to determine whether transfer would serve "'the convenience of the parties and witnesses' and otherwise promote the 'interests of justice.'" *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 62-63 (2013) (quoting 28 U.S.C. § 1404(a)); *see also Bent*, 2015 U.S. Dist. LEXIS 160573, at *8 (explaining relevant factors). "That calculus changes, however, when the parties contract contains a valid forum-selection clause." *Atl. Marine*, 571 U.S. at 63.

"When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Id.* at 62. In those circumstances, "the plaintiff's choice of forum merits no weight," and "plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* at 63. Further, a party who has agreed to a forum-selection clause has "waive[d] the right to challenge the preselected forum as inconvenient," and therefore the district court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* at 64.

Accordingly, "[w]hen assessing a motion to transfer on the basis of an alleged forum-selection clause, 'the Court must consider, first, whether the forum-selection clause is valid and, second, whether public interest factors nevertheless counsel against its enforcement.'" *Bent*, 2015 U.S. Dist. LEXIS 160573, at *10 (quoting *Midamines SPRL Ltd. V. KBC Bank NV*, 2014 U.S. Dist. LEXIS 37731, at *3 (S.D.N.Y. Mar. 18, 2014)).  "Only under extraordinary circumstances" should the motion be denied.  *Atl. Marine*, 571 U.S. at 62.

## B.    The Forum Selection Clause is Valid and Requires Transfer to the Eastern District of North Carolina

"A forum selection clause is 'presumptively enforceable' if the moving party can demonstrate that:   (1) the clause was reasonably communicated to the party challenging enforcement; (2) the clause is mandatory, rather than permissive, in nature; and (3) the clause encompasses the plaintiff's claims."  *Bent*, 2015 U.S. Dist. LEXIS 160573, at *10-11 (quoting *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007)).  "If these conditions are satisfied, the clause must be enforced unless the party opposing transfer makes a 'sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid."  *Id.* at *10-11 (quoting *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014)).

### 1.    The Forum Selection Clause Was Reasonably Communicated to Plaintiff.

As a general matter, "parties are charged with knowing and understanding the contents of documents they knowingly sign."  *Horvath v. Banco Comercial Portugues, S.A.*, 461 F. App'x 61, 63 (2d Cir. 2012).  Therefore "courts assume that a forum-

selection clause stated in clear and unambiguous language was reasonably communicated to the plaintiff." *Bent*, 2015 U.S. Dist. LEXIS, at *11.

A party's failure to read the terms of its contract cannot defeat the application of an otherwise valid forum selection clause contained therein. *See Scherillo v. Dun & Bradstreet, Inc.*, 684 F. Supp. 2d 313, 322-24 (E.D.N.Y. 2010); *Ainsley Skin Care of NY v. Elizabeth Grady Face First, Inc.*, 1997 U.S. Dist. LEXIS 19102, at *11 (S.D.N.Y. Dec. 1, 1997) (noting that excuses for a failure to read or understand a forum selection clause are rejected frequently in this district).  "[E]ven when such a clause does not appear in the actual document a plaintiff signs, but is merely incorporated into it by reference, courts consistently reject the contention that the clause was not 'reasonably communicated' to the plaintiff."  *Giordono v. UBS, AG*, 134 F. Supp. 3d 697, 706 (S.D.N.Y. 2015) (collecting cases); *see also In re Hapag-Lloyd Aktiengesellschaft*, 573 F. Supp. 3d 934, 954 (S.D.N.Y. 2021) (forum selection clause was reasonably communicated in a bill of lading that expressly referenced terms and conditions published on a party's website), *adopted by* 573 F. Supp. 3d 934 (S.D.N.Y. 2021); *cf. Scherillo*, 684 F. Supp. 2d at 322 (forum selection clause contained within defendant's standard terms and conditions was reasonably communicated to a plaintiff website user who checked a box on the website to indicate his agreement); *Laspata DeCaro Studio Corp. v. Rimona GmbH*, 2017 U.S. Dist. LEXIS 70017, at *12-13 (S.D.N.Y. May 8, 2017) (finding that a forum selection clause was reasonably communicated for all matters through an agreement that general terms and

conditions "would apply for future business relationships, even if they are not explicitly agreed upon again").

There can be no question that ChannelAdvisor communicated the contents of the MSA to Plaintiff.  Plaintiff signed two Statements of Work that provided a hyperlink to the MSA posted on ChannelAdvisor's website, and further stated:

> By signing below, Customer acknowledges and agrees that it has read the MSA and agrees to be fully bound to its terms.

Cornetta Decl. at Ex. A, Ex. B.  Those Statements of Work also included agreement by Plaintiff that any subsequent modifications to the MSA would apply to any contract renewal beyond the initial twelve-month term.  *Id.* at Ex. A § 3, Ex. B § 3.

At all times relevant to this matter, Plaintiff had access to a copy of the MSA on ChannelAdvisor's website through the link provided in the Statements of Work. The word "exclusive" was added to the MSA's forum selection clause as of February 2019, and therefore that version of the forum-selection clause became controlling as of the automatic extension of the parties' agreement beyond the initial twelve-month term.  Plaintiff confirmed the applicability of the updated version of the MSA by signing three separate contract amendments following the conclusion of the initial twelve-month term, each of which expressly acknowledged the applicability of the MSA, including "any new or changed terms."  *Id.* at Ex. E § 3, Ex. F § 3, Ex. G § 3.

In short, ChannelAdvisor repeatedly and reasonably communicated the applicability of the terms of the MSA to Plaintiff, including those such as the forum selection clause that were modified following the initiation of the parties' contract.

Whether Plaintiff reviewed the MSA is inconsequential.  Accordingly, this Court should find that the forum selection clause was reasonably communicated to Plaintiff.

> 2.    <u>The Forum Selection Clause is Mandatory.</u>

Where, as here, a contract "contains both a choice-of-law and a choice-of-forum clause," a district court applies "the law contractually selected by the parties" when interpreting the agreement.  *Martinez v. Bloomberg LP*, 740 F.3d 211, 217-218 (2d Cir. 2014).  Therefore, North Carolina law governs the determination of whether the parties' forum selection clause is mandatory or permissive.

Under North Carolina law, courts routinely recognize a forum selection clause as mandatory when it "contain[s] words such as 'exclusive' or 'sole' or 'only' which indicate that the contracting parties intended to make jurisdiction exclusive." *Mark Grp., Int'l, Inc. v. Still*, 151 N.C. App. 565, 568, 566 S.E.2d 160, 162 (N.C. Ct. App. 2002); *see also Maxwell Foods, LLC v. Smithfield Foods, Inc.*, 2021 U.S. Dist. LEXIS 74856, at *8-9 (E.D.N.C. Feb. 22, 2021).  For example, the North Carolina Business Court has found a forum selection clause to be mandatory under North Carolina law when it states that "the parties irrevocably submit to the exclusive jurisdiction of" their chosen forum.  *Talisman Software, Sys. & Servs., Inc. v. Atkins*, 2016 NCBC LEXIS 1, at *15 (N.C. Bus. Ct. Jan. 4, 2016).

The applicable forum selection clause in this case is mandatory under the interpretative standards developed under North Carolina law.  It provides in pertinent part that "each party ***irrevocably and unconditionally*** consents and ***submits to the <u>exclusive</u> jurisdiction*** of the applicable courts located in Wake

County, North Carolina."  Cornetta Decl. at Ex. D § 11.3 (emphasis added).  The parties' intent to make jurisdiction in Wake County, North Carolina mandatory is indicated by the inclusion of the word "exclusive."  *Mark Grp.*, 151 N.C. App. at 568, 566 S.E.2d at 162.  In fact, the clause is nearly identical to the text of the clause in *Talisman Software* which the North Carolina Business Court found to be "unambiguous and mandatory."  *Talisman Software*, 2016 NCBC LEXIS 1, at *15.

Accordingly, this Court should find that the parties' forum selection clause is mandatory, rather than permissive.

      3.   <u>The Forum Selection Clause Encompasses This Action.</u>

"When determining the scope of a forum selection clause, the Court examines the substance of the claims, shorn of their labels, and relates the substance of the claims to the precise language of the clause, discounting the precedential weight of cases that deal with dissimilarly worded clauses."  *Speedfit LLC v. Woodway USA, Inc.*, 2022 U.S. Dist. LEXIS 211862, at *22 (S.D.N.Y. Nov. 22, 2022) (citation omitted); *see Phillips*, 494 F.3d at 388-90.

Courts generally distinguish between two types of forum selection clauses: "[t]he narrower category includes terms such as 'arise out of,' 'arise from,' or 'arising under,' whereas the broader category includes terms such as 'in connection with,' 'relating to,' or 'associated with.'"  *Speedfit*, 2022 U.S. Dist. LEXIS 211862 at *22-23; *see Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (noting that the phrase "any claim or controversy arising out of or relating to the agreement" is "the paradigm of a broad clause").  The broader category of forum

selection clauses "have been construed broadly to encompass actions other than for breach of contract." *Bent*, 2015 U.S. Dist. LEXIS 160573, at *18-19.  A broad forum-selection clause encompasses tort and other non-contract claims if those claims "ultimately depend on the existence of a contractual relationship between the parties, or if resolution of the claims relates to interpretation of the contract, or if the tort claims involve the same operative facts as a parallel claim for breach of contract." *In re LIBOR-Based Fin. Instrs. Antitrust Litig.*, 2015 U.S. Dist. LEXIS 107225, at *178 (S.D.N.Y. Aug. 4, 2015) (citation omitted); see also *SingularDTV GmbH v. LeBeau*, 2022 U.S. Dist. LEXIS 185815, at *13 (S.D.N.Y. Oct. 11, 2022) (regarding statutory claims).

The MSA provides for exclusive jurisdiction in Wake County, North Carolina for "***any action, suit or proceeding*** arising out of or ***relating to this Agreement.***" Cornetta Decl. at Ex. D § 11.3.  This action either "arises out of" or "relates to" the MSA and its incorporated Statements of Work.  Plaintiff asserts a claim for breach of contract based on its general allegation that ChannelAdvisor's technology "failed" and "was not working as advertised or promised in the Agreement." *See* Compl. ¶ 20.  It also asserts related claims for "breach of express warranty" and "breach of implied warranty of merchantability" based on the alleged warranties contained in that agreement. *Id.* ¶¶ 50, 56.

In addition, each of Plaintiff's statutory and tort claims depend on the existence of the contract, relate to its interpretation, or involve the same operative facts as its breach of contract claim (*i.e.*, the alleged faultiness of ChannelAdvisor's

technology). *See* <u>Second Claim for Relief</u>, Compl. ¶ 37 (asserting unjust enrichment to seek redress for the deprivation of "the benefit of its bargain" for ChannelAdvisor's "technology not properly working"); <u>Third Claim for Relief</u>, *id.* ¶ 42 (alleging violation of New York General Business Law § 349 for "billing for work . . . but failing to ever have the product work as intended or promised"); <u>Fourth Claim for Relief</u>, *id.* ¶ 47 (alleging violation of New York General Business Law § 350 on the grounds that ChannelAdvisor's technology does not "properly work as advertised and as agreed to"); <u>Seventh Claim for Relief</u>, *id.* ¶¶ 61-65 (alleging that ChannelAdvisor negligently misrepresented the functionality of its technology); <u>Eighth Claim for Relief</u>, *id.* ¶¶ 69-70 (alleging that ChannelAdvisor fraudulently induced Plaintiff to contract with ChannelAdvisor by misrepresenting the functionality of its technology). Indeed, courts consistently have applied forum selection clauses to these exact causes of action when they relate to a contract. *See, e.g.*, *GlaxoSmithKline LLC v. Laclede, Inc.*, 2019 U.S. Dist. LEXIS 10952, at *12-13 (S.D.N.Y. Jan. 23, 2019) (finding false advertising claim to be subject to forum selection clause); *Novak v. Tucows, Inc.*, 2007 U.S. Dist. LEXIS 21269, at *41-48 (E.D.N.Y. Mar. 26, 2007) (finding claim under General Business Law § 349 to be subject to forum selection clause); *Knowyourmeme.com Network v. Nizri*, 2021 U.S. Dist. LEXIS 163283, at *29-32 (S.D.N.Y. Aug. 30, 2021) (applying forum selection clause to claims of fraudulent inducement, negligent misrepresentation, and unjust enrichment).

In short, this action, and each of the individual claims asserted by Plaintiff in this action, "arise out of" or "relate to" the MSA and the Statements of Work

incorporated therein by reference.  The Court should find that the forum selection clause encompasses this action.

4.     <u>The Forum Selection Clause is Not Unreasonable, Unjust, or Invalid.</u>

Forum selection clauses generally "deserve to be honored by the courts" because they "carry an economic benefit to at least one of the parties that is typically reflected in the overall economics of the contract." *Zurich Ins. Co. v. Prime, Inc.*, 419 F. Supp. 2d 384, 386-87 (S.D.N.Y. 2005).  A party resisting enforcement of a forum selection clause on the grounds of its validity or reasonableness "must make a strong showing to defeat that contractual commitment." *Asoma Corp. v. SK Shipping Co.*, 467 F.3d 817, 822 (2d Cir. 2006); *see also Martinez*, 740 F.3d at 217.  "This is a heavy burden, and where the forum selection clause grows out of arms-length negotiations between sophisticated business persons, such a showing is difficult to make." *Bluefire Wireless, Inc. v. Cloud9 Mobile Communs., Ltd.*, 2009 U.S. Dist. LEXIS 119009, at *6 (S.D.N.Y. Dec. 21, 2009) (cleaned up).

The forum selection clause is valid, and the enforcement of the clause in this case between two sophisticated companies will not be unreasonable or unjust.  To date, Plaintiff has not provided any explanation for why it disregarded the forum selection clause by filing this action in New York.[2]  To the extent Plaintiff attempts

---

[2] Plaintiff's general allegations of fraudulent inducement are "not enough to invalidate a forum-selection clause" because Plaintiff "has not alleged fraudulent inducement with respect to the forum-selection clause itself." *Bent*, 2015 U.S. Dist. LEXIS 160573, at *21-22 (quoting *Brodsky v. Match.com LLC*, 2009 U.S. Dist. LEXIS 101167, at *3 (S.D.N.Y. Oct. 28, 2009)).

to show that it is invalid, or that its enforcement would be unreasonable or unjust, ChannelAdvisor will address any such argument in its reply brief.

**C.      Public Interest Considerations Do Not Outweigh the Enforceability of the Forum Selection Clause.**

"Public interest factors include considerations like the administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home, and the interest in having the trial of a diversity case in a forum that is at home with the law." *Midamines SPRL Ltd. v. KBC Bank NV*, 2014 U.S. Dist. LEXIS 37731, at *23-24 (S.D.N.Y. Mar. 18, 2014) (cleaned up).  They will "rarely defeat a transfer motion" premised on a forum-selection clause, *id.*, and they should not do so here.

There is no reason to believe that court congestion will cause administrative difficulties either in this Court or in the Eastern District of North Carolina.  The Eastern District of North Carolina has no judicial vacancies, *see* Roether Decl. ¶ 3 & Ex. B, and therefore any concern by Plaintiff that it will encounter administrative difficulties there is unfounded.  *Glob. Art Exhibitions, Inc. v. Kuhn & Bülow Italia Versicherungsmakler GmbH, Ergo Versicherungs AG*, 2022 U.S. Dist. LEXIS 107069, at *25 (S.D.N.Y. June 15, 2022) (citation omitted) (noting that this factor has "little or no present significance" when a federal court has a "full complement of judges for the District").

This also is not a 'localized controversy,' but rather a business dispute between companies residing in and operating from different states.  Plaintiff is a New York corporation, but it expressly alleges that its employee traveled to North Carolina for

ChannelAdvisor to "showcase [its] platform" to Plaintiff.  *See* Compl. ¶¶ 13-14.  The parties contract also contains a North Carolina choice-of-law clause, and ChannelAdvisor's allegedly deficient performance necessarily would have occurred in North Carolina.  Cornetta Decl. ¶¶ 18-23.  Therefore, this is not a controversy for which New York has an overwhelming interest in applying its own law to a local controversy—if anything, these factors actually weigh in favor of transfer to the Eastern District of North Carolina.  *See Giordano*, 134 F. Supp.3d at 704 (finding that a controversy is not "localized" in New York when the "majority of alleged facts and conduct" occurred elsewhere); *Windserve Marine, LLC v. US Workboats, LLC*, 2021 U.S. Dist. LEXIS 234109, at * 17-18 (E.D.N.Y. Apr. 1, 2021) (finding that public interests weighed in favor of transfer when the contract was performed in North Carolina and contained a North Carolina choice-of-law provision).

In short, this is not the rare case in which public interest considerations are sufficient to upset a valid forum-selection clause.  The Court should transfer this action to the Eastern District of North Carolina.

### D.  The Private Interest Factors Also Weigh in Favor of Transfer.

The Court need not review the private interest factors because Plaintiff agreed to litigate this action in the Eastern District of North Carolina.  *See Atl. Marine*, 571 U.S. at 64; *Encompass Aviation, LLC v. Surf Air, Inc.*, 2018 U.S. Dist. LEXIS 205596, at *33-34 (S.D.N.Y. Nov. 29, 2018).  However, if the Court ultimately were to decline to apply that forum-selection clause to one or more of Plaintiff's non-contractual

claims,[3] transfer of this entire action to the Eastern District of North Carolina still is in the interest of justice because the private interest factors weigh in favor of transfer.

The private factors include "the locus of operative facts; access to evidence; the convenience of witnesses; the availability of compulsory process to compel witness testimony; the convenience of the parties; and, the relative financial means of the parties." *Encompass Aviation*, 2018 U.S. Dist. LEXIS 205596, at *33-34.

Many of those private factors are neutral or of limited significance in context of this case.  For example, the relative financial means of the parties does not carry much weight when both parties are corporate entities.  *See Tianhai Lace USA, Inc. v. Forever 21, Inc.*, 2017 U.S. Dist. LEXIS 168187, at *17 (S.D.N.Y. Sept. 27, 2017). ChannelAdvisor's documents and software operations are in North Carolina, but the location of documents and proof is "mostly a neutral factor in light the technological age in which we live, where there is widespread use" of electronic discovery practices. *Tlapanco v. Elges*, 207 F. Supp. 3d 324, 330-31 (S.D.N.Y. 2016) (cleaned up).  Finally, the availability of compulsory process is a neutral factor because ChannelAdvisor is not aware of any non-party witnesses who can be compelled to one jurisdiction, but not to the other.

---

[3] In that case, venue is proper in the transferee district as to any such claims because ChannelAdvisor resides in the Eastern District of North Carolina.  *See* 28 U.S.C. § 113(a); 28 U.S.C. § 1391.  Transfer of the entire action also will promote judicial economy in the event Court finds that some, but not all, of Plaintiff's claims are encompassed by the mandatory forum selection clause.  Indeed, courts "routinely" transfer claims under Section 1404(a) to promote judicial economy "where related claims were already proceeding in another district or had to be transferred to another district pursuant to a forum selection clause." *Pence*, 236 F. Supp. 3d at 854.

Other factors weigh in favor of transfer.

"The locus of operative facts is a primary factor in determining whether to transfer venue." *Tlapanco*, 207 F. Supp. 3d at 331 (citation omitted). "Transfer generally is appropriate where a cause of action arises from claims of alleged wrongdoing in the proposed transferee district." *Id.* (cleaned up). The locus of operative facts "is the place where the acts or omissions for which Defendants could be held liable occurred," and therefore a court determining the locus of operative facts "must look to the site of the events from which the claim arises." *Placek v. Shopoff*, 2018 U.S. Dist LEXIS 163239, at *13-14 (S.D.N.Y. Sept. 24, 2018) (quoting *Enigma*, 260 F. Supp. 3d at 410)). When determining the locus of operative facts in a contract dispute, courts consider where the contract was negotiated, formed, and allegedly breached, with "particular focus on where the contract was performed." *Id.* at *15; *see Pence v. Gee Grp., Inc.*, 236 F. Supp. 3d 843, 855 (S.D.N.Y. 2017). In this case, the locus of operative facts is the Eastern District of North Carolina. ChannelAdvisor negotiated the contract from there. Cornetta Decl. ¶ 9. Plaintiff alleges that ChannelAdvisor breached the contract by providing a faulty software platform and deficient services, and those were provided and performed by ChannelAdvisor from its corporate campus in Wake County, North Carolina. *Id.* ¶ 18. In addition, to the extent Plaintiff relies on extracontractual representations to support its statutory and tort claims, the Complaint vaguely alleges that such "promises" were made in North Carolina. *See* Compl. ¶¶ 13-14. In contrast, the only alleged nexus between this case and the State of New York is Plaintiff's residency. *Id.* ¶ 7

The convenience of witnesses also favors transfer.   ChannelAdvisor anticipates that Plaintiff's officer and employee witnesses live and work in or around the Southern District of New York.   However, the "most central witnesses" in this case will be ChannelAdvisor employees who can testify regarding the functionality and performance of ChannelAdvisor software platform and services, *Enigma*, 260 F. Supp. 3d at 409, and the majority of those witnesses live and work in North Carolina. *See* Cornetta Decl. ¶¶ 19-23.

In sum, the only private interest factor that disfavors transfer is Plaintiff's choice of forum, and that choice warrants lesser deference because the "connection between the case and chosen forum is minimal." *Enigma*, 260 F. Supp. 3d at 411-12. Therefore, even in the absence of the mandatory forum selection clause, transfer of this action to the Eastern District of North Carolina is warranted.

## V.    CONCLUSION

ChannelAdvisor respectfully requests that the Court grant its motion and enter an Order which transfers this action in its entirety to the Eastern District of North Carolina, Western Division.

Dated:  March 2, 2023

Respectfully submitted,

MORNINGSTAR LAW GROUP

 /s/ *Jeffrey L. Roether*
Jeffrey L. Roether
jroether@morningstarlawgroup.com
700 W. Main St.
Durham, NC  27701
Telephone: (919) 590-0368
Facsimile:  (919) 882-8890

*Attorneys for Defendant ChannelAdvisor*
*Corporation*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing Memorandum of Law in Support of Defendant ChannelAdvisor Corporation's Motion to Transfer Venue was this day served on all counsel of record via the Court's electronic filing system.

Dated:  March 2, 2023.


MORNINGSTAR LAW GROUP

  /s/ *Jeffrey L. Roether*