UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

AVI & CO NY CORP.,                           :

             Plaintiff,            :

      -against-               :     Case No. 22-cv-10599(PAE)

CHANNELADVISOR CORPORATION,   :

            Defendant.       :

-------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CHANNELADVISOR CORPORATION'S MOTION TO DISMISS

# **INDEX**

TABLE OF AUTHORITIES..............................................................................IV

INTRODUCTION ...........................................................................................1

STATEMENT OF ALLEGED FACTS ...........................................................2

    A. Plaintiff's Allegations .........................................................................2

    B. Contract Terms .................................................................................3

ARGUMENT ...................................................................................................6

    A. APPLICABLE LEGAL STANDARDS .............................................6

        1. Pleading Standards ....................................................................6

        2. Choice-of Law Rules .................................................................7

    B. AVI FAILS TO STATE A CLAIM FOR VIOLATION OF NEW YORK GENERAL BUSINESS LAW §§ 349 AND 350 .............................................8

    C. AVI'S CONTRACT-BASED CLAIMS SHOULD BE DISMISSED IN PART ...........................................................................................11

        1. North Carolina Law Applies to Avi's Contract and Warranty Claims .................................................................................12

        2. Avi's Contract-Based Claims For Consequential, Incidental, and Punitive Damages For Breach Of Contract And Breach of Express Warranty Should Be Dismissed ...........................................13

        3. Avi's Claim For Breach Of Implied Warranty Of Merchantability Fails Because Any Implied Warranty Was Effectively Disclaimed .....15

    D. AVI FAILS TO STATE TORT CLAIMS FOR NEGLIGENT MISREPRESENTATION OR FRAUDULENT INDUCEMENT ..............17

        1. North Carolina Law Applies to Avi's Tort-Based Claims .....................17

        2. Avi's Claims For Negligent Misrepresentation and Fraudulent Inducement Fail to Allege Breach of Any Non-Contractual Duty .......18

3.  Avi's Claim For Fraudulent Inducement Fails to Allege Scienter ....... 20

4.  Avi's Mistake or Fraud-Based Claims Fail to Satisfy Rule 9(b)'s Heightened Pleading Standard ............................................................. 20

E.  AVI'S UNJUST ENRICHMENT CLAIM FAILS BECAUSE THERE IS A CONTRACT BETWEEN THE PARTIES ................................................... 22

CONCLUSION .......................................................................................................... 24

CERTIFICATE OF SERVICE ................................................................................. 26

## <u>TABLE OF AUTHORITIES</u>

### Cases

*Ashcroft v. Iqbal,*
  556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)......................................... 6

*Axiom Inv. Advisors, LLC v. Deutsche Bank AG,*
  234 F. Supp. 3d 526 (S.D.N.Y. 2017)............................................................. 9, 10, 11

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)......................................... 6

*Blackman v. Boston Whaler, Inc.,*
  2023 U.S. Dist. LEXIS 1503 (E.D.N.C. Jan. 5, 2023) ........................................... 18

*Caputo v. Pfizer, Inc.,*
  267 F.3d 181 (2d Cir. 2001) .......................................................................... 21

*Cf. Shields v. Citytrust Bancorp, Inc.,*
  25 F.3d 1124 (2d Cir. 1994) .......................................................................... 22

*Chung v. Igloo Prods. Corp.,*
  2022 U.S. Dist. LEXIS 120825 (E.D.N.Y. July 8, 2022)......................................... 10

*Colpitts v. Blue Diamond Growers,*
  527 F. Supp. 3d 562 (S.D.N.Y. 2021)....................................................... 18

*Cortec Industries, Inc. v. Sum Holding L.P.,*
  949 F.2d 42 (2d Cir. 1991) ............................................................................ 3

*Dillon v. The Leazer Group, Inc.,*
  374 F. Sup. 3d 547 (E.D.N.C. 2019) ............................................................. 18, 19

*Eaves v. Designs for Fin., Inc.,*
  785 F. Supp. 2d 229 (S.D.N.Y. 2011)....................................................... 20

*Electron Trading LLC v. Morgan Stanley Co. LLC,*
  157 A.D.3d 579; 69 N.Y.S.3d 633 (1st Dept. 2018)................................. 14

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.,*
  375 F.3d 168 (2d Cir. 2004) ....................................................................... 21

*Forgione v. Gaglio,*
  2015 U.S. Dist. LEXIS 21644, (S.D.N.Y. Feb. 13, 2015) ....................................... 11

*Fung-Schwartz, MD v. Cerner Corp.,*
  2018 U.S. Dist. LEXIS 156646 (S.D.N.Y. Sept. 13, 2018).............................. 10, 11

*Gilbert v. Seton Hall Univ.,*
  332 F.3d 105 (2d Cir. 2003) ..................................................................................... 7

*Gill v. NFL,*
  2021 U.S. Dist. LEXIS 211887 (S.D.N.Y. Nov. 2, 2021)....................................... 23

*Goshen v. Mutual Life Ins. Co. of N.Y.,*
  98 N.Y. 314, 774 N.E.2d 1190, 746 N.Y.S.2d 858 (2002).......................................... 9

*Hesse v. Godiva Chocolatier,*
  463 F. Supp. 3d. 453 (S.D.N.Y. 2020)...................................................................... 20

*Hidalgo v. Johnson & Johnson Consumer Cos,*
  148 F. Supp. 3d 285 (S.D.N.Y. 2015)................................................................. 22, 23

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,*
  F.3d 69 (2d Cir. 1995) ............................................................................................... 6

*INV Accelerator, LLC v. MX Techs., Inc.,*
  2020 U.S. Dist. LEXIS 31579 (S.D.N.Y. Feb. 24, 2020) ........................................ 11

*Jurgensen v. Felix Storch, Inc.,*
  2012 U.S. Dist. LEXIS 86312, 2012 WL 2354247 (S.D.N.Y. June 14, 2012) ........ 24

*Kelly v. Georgia-Pacific, LLC,*
  671 F. Supp. 2d 785 (E.D.N.C 2009) ...................................................................... 15

*Kinsey v. The New York Times Co.,*
  991 F.3d 171 (2d Cir. 2021) ........................................................................... 7, 8, 17

*LaGuardia Assocs. v. Holiday Hosp. Franchising, Inc.,*
  92 F. Supp. 2d 119 (E.D.N.Y 2000) .......................................................................... 8

*Lake v. Ford Motor Co.,*
  2019 U.S. Dist. LEXIS 143956 (E.D.N.Y. Aug. 22, 2019) ..................................... 16

*Lasalle Bank Nat'l Assoc. v. Citicorp Real Estate, Inc.,*
  2003 U.S. Dist. LEXIS 4315 (S.D.N.Y. Mar. 21, 2003) ......................................... 18

*LCO Destiny, LLC v. Michaels Stores, Inc.,*
    543 F. Supp. 2d 129 (S.D.N.Y. 2008)........................................................ 19

*Lexington Ins. Co. v. Tires Into Recycled Energy & Supplies, Inc.,*
    136 N.C. App. 223, 522 S.E. 2d 798 (N.C. Ct. App. 1999) ..................................... 14

*Luce v. Edelstein,*
    802 F.2d 49 (2d Cir.1986) ..................................................................... 21

*Martin v. New Am. Cinema Grp., Inc.,*
    2023 U.S. Dist. LEXIS 26014 (S.D.N.Y. Feb. 15, 2023) ........................................ 9

*Matsumura v. Benihana Nat. Corp.,*
    542 F. Supp. 2d 245 (S.D.N.Y. 2008)......................................................... 7

*McManus v. GMRI, Inc.,*
    2012 U.S. Dist. LEXIS 92094 (W.D.N.C. July 3, 2012)......................................... 23

*McPhee v. GE Int'l, Inc.,*
    737 F. Supp. 2d 676 (S.D.N.Y. 2010)...................................................... 8, 12

*Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.,*
    72 Fed. App'x 916 (4th Cir. 2003)............................................................ 22

*Novak v. Kasaks,*
    216 F.3d 300 (2d Cir. 2000) ................................................................... 22

*Nw. Mut. Life Ins. Co. v. Banc of Am. Sec. LLC,*
    254 F. Supp. 2d 390 (S.D.N.Y. 2003).......................................................... 7

*Parisi v. Wipro Ltd.,*
    2016 U.S. Dist. LEXIS 162722 (S.D.N.Y. Nov. 23, 2016)........................................ 8

*Presnell v. Snap-On Securecorp Inc.,*
    583 F. Supp. 3d 702 (M.D.N.C. 2022) ................................................... 15, 16

*Roberts v. Weight Watchers Int'l, Inc.,*
    217 F. Supp. 3d 742 (S.D.N.Y. 2016)...................................................... 3, 15

*Severn Peanut Co. v. Indus Fumigant Co.,*
    807 F.3d 88 (4th 2015).......................................................................... 14

*Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC,*
    832 F. Supp. 2d 194 (S.D.N.Y. 2010)......................................................... 11

*Signify N. Am. Corp. v. Reggiani Lighting USA, Inc.,*
   2020 U.S. Dist. LEXIS 49792 (S.D.N.Y. Mar. 23, 2020) ........................................ 7

*St. Francis Holdings, LLC v. MMP Capital, Inc.,*
   2022 U.S. Dist. LEXIS 61008 (E.D.N.Y. 2022) ...................................................... 17

*Taylor v. Microgenics Corp.,*
   2023 U.S. Dist. LEXIS 22561 (S.D.N.Y. Feb. 9, 2023) ........................................... 9

*TOA Sys., Inc. v. IBM,*
   2019 U.S. Dist. LEXIS 191318 (S.D.N.Y. Nov. 4, 2019) ........................................ 15

*Tsirelman v. Daines*,
   794 F.3d 310 (2d Cir. 2015) ..................................................................................... 6

*United States ex rel. Chorches v. Am. Med. Response, Inc.,*
   865 F.3d 71 (2d Cir. 2017) ....................................................................................... 7

*Warren W. Fane, Inc. v. Tri-State Diesel, Inc.,*
   2014 U.S. Dist. LEXIS 62824 (N.D.N.Y. May 7, 2014) ................................... 14, 16

*Woori Bank v. RBS Sec., Inc.,*
   910 F. Supp. 2d 697 (S.D.N.Y. 2012) ..................................................................... 21

## Statutes and Other Authorities

Fed. R. Civ. P. 9(b) ................................................................................................*passim*

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 1, 3, 6

N.C. Gen. Stat. § 25-2-316(2) ...................................................................................... 16

N.C. Gen. Stat. § 25-2-719............................................................................................ 13, 15

N.Y. Business Law § 349 ........................................................................................*passim*

N.Y. Business Law § 350 ........................................................................................*passim*

N.Y. U.C.C. Law § 1-201(10) ...................................................................................... 23

N.Y. U.C.C. Law § 2-719................................................................................... 20, 21, 22

## I.    INTRODUCTION

Pursuant to Local Civil Rule 7.1(a)(2), defendant ChannelAdvisor Corporation ("ChannelAdvisor") submits this memorandum of law in support of its motion to dismiss pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

ChannelAdvisor and plaintiff Avi & Co. NY Corp. ("Avi" or "Plaintiff") were parties to a contract. Avi generally asserts that ChannelAdvisor, an e-commerce company, failed to "abide by its agreement to provide a working platform that combines multiple marketplaces in one unified platform" because it provided a platform which never "operated as the parties intended pursuant to their agreement with each other."  Complaint, Dkt. 12 ("Compl.") ¶ 1.

Based on this alleged failure, Plaintiff asserts eight claims for relief:  (1) breach of contract, (2) unjust enrichment, (3) deceptive trade practices (New York General Business Law § 349), (4) false advertising (New York General Business Law § 350), (5) breach of express warranty, (6) breach of implied warranty of merchantability, (7) negligent misrepresentation, and (8) fraudulent inducement. *Id.* ¶¶ 28 – 77.   Avi seeks an award of "no less than" $1 million, including consequential and incidental damages, attorney's fees, costs and interest, and punitive damages.  *Id.* ¶¶ 5, 34, 67, 77, 78(a).

The Court should dismiss all claims except for the First Claim for Relief (breach of contract) and the Fifth Claim for Relief (breach of express warranty).  With respect to those claims, the Court should dismiss the demand for damages expressly excluded by the contract, including damages for lost profits or loss of data, any form

of indirect, special, incidental, punitive, or consequential damages of any character, and other damages which exceed the contractual cap on total damages.

## II.   STATEMENT OF ALLEGED FACTS[1]

### A.   Plaintiff's Allegations

Avi is a retailer of diamond jewelry and watches.   *See* Compl. ¶ 10. ChannelAdvisor is an e-commerce company that offers various services to companies that sell products through online marketplaces.  *Id.* ¶ 11.  Avi entered a contract with ChannelAdvisor for use of its software platforms, including the Digital Marketing Module.  *Id.* ¶¶ 11, 29.  The Digital Marketing Module allows a seller to manage digital marketing campaigns across multiple channels and providers from a single interface.  *Id.* ¶ 15.

Before Avi entered the contract with ChannelAdvisor, ChannelAdvisor "flew an employee of Plaintiff's out to North Carolina to showcase their platform." *Id.* ¶ 13. At the meeting, "Defendant promised Plaintiff that their unified platform works and will streamline Plaintiff's sales and lead to move revenue." *Id.* ¶ 14.  ChannelAdvisor advertised that its product "unifies multiple selling platforms into a single unified platform." *Id.* ¶ 47.

Avi asserts that ChannelAdvisor's technology did not perform as advertised or promised, and that it experienced multiple problems with the technology from the

---

[1] ChannelAdvisor recognizes that, at this procedural posture, the legal evaluation of Plaintiff's claim must be based on the particularized allegations made, whether or not they are true. Many of Plaintiff's central allegations ultimately will be shown to be incorrect, contrary to actual events, and without factual basis.  Even at this stage, the Court can note that Avi used ChannelAdvisor's services beyond the initial 12-month term, *see* Dkt 14-7, and now claims to have been "reliev[ed]" of its "obligations under the Agreement," Compl. ¶ 32.

outset.  *Id.* ¶¶ 17-25.  ChannelAdvisor billed Avi for "work related to streamlining multiple marketplaces into a single unified platform" but the product did not "work as intended."  *Id.* ¶ 42.  Avi claims to have suffered "at least $400,000 in damages, exclusive of consequential and incidental damages, consisting of lost profit on sales in an amount to be determined at trial."  *Id.* ¶ 27.

**B.**    **Contract Terms**[2]

The Agreement between Avi and ChannelAdvisor was comprised of the 7-page Master Services Agreement ("MSA") and Statements of Work (which identify specific services and applicable fees, among other terms).  *See* Dkt. 14-4 § 1.0  (defining "Agreement" to mean "the terms and conditions in th[e] MSA, together with all [Statements of Work], Exhibits and invoices.").

On 29 January 2019, Avi and ChannelAdvisor executed a "Statement of Work for Managed Marketplaces" and a "Statement of Work for Managed Digital Marketing."  *See* Dkt. 14-1; Dkt. 14-2.  Each Statement of Work recites that its terms are "incorporated into the Master Services Agreement ("MSA") agreed to amongst the parties found at http://channeladvisor.com/terms."  *See* Dkt. 14-1 at p.1; Dkt 14-2 at

---

[2] Avi purports to rely on the contract terms in framing the allegations of the Complaint, including its claim for its breach of contract.  Therefore, the contract is integral to Plaintiff's claim and may be considered on a motion to dismiss without converting it to a motion for summary judgment.  *See, e.g., Roberts v. Weight Watchers Int'l, Inc.*, 217 F. Supp. 3d 742 (S.D.N.Y. 2016) ("When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken." (citation omitted)); *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991) (Plaintiffs' failure to include documents of which they "had notice," and were "integral" to their claim which they "apparently most wanted to avoid," could not forestall dismissal).

p.2. The written terms constituted the "entire agreement between the parties with respect to the subject matter of this SOW and supersede[d] any and all prior or collateral agreements with respect to the subject matter hereof." *See* Dkt. 14-1 § 5; Dkt. 14-2 § 5. Each Statement of Work specified that any amendments would be "governed by the MSA and must be in writing and executed by the parties." *Id.*

The Statement of Work for Managed Marketplaces was amended 3 times: Amendment 1 (dated 29 January 2020); Amendment 2 (dated 9 April 2020); and Amendment 3 (dated 23 July 2020). *See* Dkt. 14-5; Dkt. 14-6; Dkt. 14-7. Each Amendment expressly stated that the written documents, as modified, constituted the "Entire Agreement" *See* Dkt. 14-5 § 3; Dkt. 14-6 § 3; Dkt. 14-7 § 3. Each Amendment also states: "The parties' execution of this Amendment shall constitute acknowledgment and acceptance of the terms of the MSA, together with any new or changed terms, for the remainder of the then-current term." *Id.*

Among other terms, the parties' Agreement included: a "DISCLAIMER OF WARRANTIES BY CHANNELADVISOR" section, Dkt. 14-4 § 7.0, a "LIABILITY LIMITATION" section, *id.* § 9.0, and a "Governing Law and Dispute Resolution" section which provides that North Carolina law applies, *id.* § 11.3.

The "DISCLAIMER OF WARRANTIES BY CHANNELADVISOR" and "LIABILITY LIMITATION" sections are the only sections of the MSA that are stated in all capital letters. *Id.* §§ 7.0, 9.0.

The DISCLAIMER OF WARRANTIES BY CHANNELADVISOR section provides, among other terms:

- CHANNELADVISOR MAKES NO WARRANTIES, WHETHER EXPRESS, IMPLIED OR STATUTORY, WITH RESPECT TO THE TECHNOLOGY.

- CHANNELADVISOR DISCLAIMS ANY AND ALL WARRANTIES WITH RESPECT TO THE TECHNOLOGY . . . INCLUDING WITHOUT LIMITATION ANY . . . IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND WARRANTIES THAT THE TECHNOLOGY WILL OPERATE UNINTERRUPTED, DEFECT-FREE OR ERROR-FREE.

- CHANNELADVISOR MAKES NO WARRANTY REGARDING THE ACCURACY, TIMELINESS, TRUTHFULNESS, COMPLETENESS OR RELIABILITY OF ANY CONTENT OBTAINED THROUGH ANY MODULE OR FROM ANY NETWORK SITE, FLEX FEED DESTINATION, OR THIRD-PARTY INTERFACE.

*Id.* § 7.0.

The LIABILITY LIMITATION section specifies, among other things:

- NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR ANY LOST PROFITS, LOSS OF DATA, OR ANY FORM OF INDIRECT, SPECIAL, INCIDENTAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES OF ANY CHARACTER FROM ANY CAUSES OF ACTION OF ANY KIND WITH RESPECT TO THIS AGREEMENT OR ANY APPLICABLE SOW, WHETHER BASED ON BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE), OR OTHERWISE, AND WHETHER OR NOT THE OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE.

- CHANNELADVISOR'S AGGREGATE LIABILITY UNDER THIS AGREEMENT OR APPLICABLE SOW WILL NOT EXCEED THE AMOUNTS PAID BY CUSTOMER UNDER THE APPLICABLE SOW GIVING RISE TO THE CLAIM DURING THE TWELVE MONTH PERIOD IMMEDIATELY BEFORE THE DATE THE CLAIM AROSE.

*Id.* § 9.0.

5

## III.   ARGUMENT

## A.   APPLICABLE LEGAL STANDARDS

### 1.   Pleading Standards

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all factual allegations in the Complaint and draws all reasonable inferences in Plaintiff's favor.'" *See Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015). Although a district court generally does not consider materials other than the complaint under Rule 12(b)(6), it may consider documents that are integral to or expressly relied on in the complaint. *See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995).

To survive dismissal, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court accepts factual allegations as true, that principle does not apply to "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*

A higher pleading standard applies to allegations of "fraud or mistake," which "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) "ordinarily requires a complaint alleging fraud to (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker,

6

(3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *United States ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017) (citation omitted).[3] "Put another way, Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud." *Signify N. Am. Corp. v. Reggiani Lighting USA, Inc.*, 2020 U.S. Dist. LEXIS 49792, *11 (S.D.N.Y. Mar. 23, 2020) (citation omitted). The heightened pleading requirements of Rule 9(b) apply to "any claim that 'sounds in fraud,' regardless of whether fraud is an element of the claim." *Matsumura v. Benihana Nat. Corp.*, 542 F. Supp. 2d 245, 251 (S.D.N.Y. 2008) (quoting *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004)).

2.    <u>Choice-of-Law Rules</u>

In diversity cases, federal courts apply the choice-of-law rules of the forum state. *See Gilbert v. Seton Hall Univ.*, 332 F.3d 105, 109 (2d Cir. 2003) (the "task is to determine what law New York courts would apply in this situation"). "Under New York choice-of-law rules, the first step in any choice of law inquiry is to determine whether there is an actual conflict between the rules of the relevant jurisdictions." *Kinsey v. The New York Times Co.*, 991 F.3d 171, 176 (2d Cir. 2021) (cleaned up). If there is a conflict between the laws of the relevant jurisdictions, the court applies "New York choice-of-law rules to decide which jurisdiction's substantive law controls." *Id.*

[3]Although North Carolina law applies to Plaintiff's claims, "Rule 9(b) is a rule promulgated pursuant to a federal statute," and therefore Second Circuit precedent governs "the interpretation and application of Rule 9(b)." *Nw. Mut. Life Ins. Co. v. Banc of Am. Sec. LLC*, 254 F. Supp. 2d 390, 396 (S.D.N.Y. 2003).

For contract claims involving a "contract with an express choice of law provision," the "court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction." *McPhee v. GE Int'l, Inc.*, 736 F. Supp. 2d 676, 680 (S.D.N.Y. 2010) (quoting *Aramarine Brokerage, Inc. v. One Beacon Ins. Co*., 307 F. App'x 562, 564 (2d Cir. 2009)); *see also LaGuardia Assocs. v. Holiday Hosp. Franchising, Inc*., 92 F. Supp. 2d 119, 127 (E.D.N.Y. 2000) (while New York's choice-of-law analysis generally points to the state with the most significant contacts to the contract, "an exception to this general rule [exists] where . . . the contract contains a choice of law clause"). Tort claims, however, are outside the scope of contractual choice of law provisions under New York choice-of-law rules. *Parisi v. Wipro Ltd.*, 2016 U.S. Dist. LEXIS 162722, at *20 (S.D.N.Y. Nov. 23, 2016). "In tort cases, New York applies the law of the state with the most significant interest in the litigation." *Kinsey*, 991 F.3d at 176 (cleaned up). "In deciding how to weigh interests, New York distinguishes between conduct-regulating rules and loss-allocating rules." *Id.*

## B.   AVI FAILS TO STATE A CLAIM FOR VIOLATION OF NEW YORK GENERAL BUSINESS LAW §§ 349 AND 350.

Avi's Third and Fourth Claims for Relief expressly rely on New York statutes prohibiting certain deceptive trade practices and false advertising. Neither claim, however, pleads facts sufficient to bring them within the purview of the statutes.

New York General Business Law § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." To state a claim for violation of Section 349, a plaintiff "must allege

that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Taylor v. Microgenics Corp.*, 2023 U.S. Dist. LEXIS 22561, at *16-17 (S.D.N.Y. Feb. 9, 2023) (quoting *City of New York v. Smokes-Spirits.Com, Inc.*, 12 N.Y.3d 616, 621, 911 N.E.2d 834, 883 N.Y.S.2d 772 (2009)).   Section 349 "applies solely to matters affecting the consumer public at large," and thus "[p]rivate contract disputes, unique to the parties," fail to state a claim for relief under Section 349. *Martin v. New Am. Cinema Grp., Inc.*, 2023 U.S. Dist. LEXIS 26014, at *22-23 (S.D.N.Y. Feb. 15, 2023) (citations omitted).

New York General Business Law § 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." "The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to § 349.  Thus, a plaintiff asserting a claim under either of these sections must, at the threshold, charge conduct that is consumer oriented." *Axiom Inv. Advisors, LLC v. Deutsche Bank AG*, 234 F. Supp. 3d 526, 537 (S.D.N.Y. 2017) (citations omitted).

Avi fails to state a claim for violation of either Section 349 or Section 350.  As an initial matter, Avi has not pleaded facts to show that it was deceived in New York or that the transaction occurred in New York.  *See Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 774 N.E.2d 1190, 746 N.Y.S.2d 858 (2002) (addressing territorial reach).  The only alleged location of the events at issue is a meeting in *North Carolina* during which some unspecified person at ChannelAdvisor allegedly made false

promises. *See* Compl. ¶¶ 13-15. Although Avi alleges that its principal place of business is New York, residency alone is insufficient to state a claim under these statutes, and Avi pleads no other nexus between New York and the transactions at issue. *See Chung v. Igloo Prods. Corp.*, 2022 U.S. Dist. LEXIS 120825, at *25 (E.D.N.Y. July 8, 2022) ("While Plaintiffs alleged that Chung is a New York resident, and that he purchased the product, this is insufficient to state a claim."). Accordingly, Avi's failure to allege facts to establish the applicability of these New York statutes warrants the dismissal of Avi's claims for their violation.

Avi fails to state a claim for the additional reason that its allegations show the absence of any "consumer-oriented conduct." In this context, "consumers" are "those who purchase goods and services for personal, family, or household use." *Axiom*, 234 F. Supp. 3d at 537 (S.D.N.Y. 2017) (quoting *Sheth v. N.Y. Life Ins. Co.*, 273 A.D.2d 72, 709 N.Y.S.2d 74, 75 (1st Dep't 2000)). "Transactions between businesses or sophisticated parties that do not affect average consumers do not constitute consumer-oriented conduct." *Fung-Schwartz, MD v. Cerner Corp.*, 2018 U.S. Dist. LEXIS 156646, at *17 (S.D.N.Y. Sept. 13, 2018).

Avi is a jewelry business, not a consumer. It *sells* products to the public, and it alleges injury from alleged deceptive conduct by a provider of *business software* intended to assist businesses in selling their products. *See* Compl. ¶¶ 10-11. Avi fails to allege conduct which plausibly could extend to personal, family, or household transactions, and its claims under Sections 349 and 350 therefore should be dismissed. Indeed, courts consistently have dismissed claims for violation of Sections

10

349 or 350 where, as here, the plaintiff is a business that alleges a business injury stemming from a transaction that is not a "traditional consumer" product or service. *Axiom*, 234 F. Supp. 3d at 537 (dismissing Section 349 and 350 claims for injury arising from use of FX trading platform); *see also, e.g.*, *INV Accelerator, LLC v. MX Techs., Inc.*, 2020 U.S. Dist. LEXIS 31579, at *20-21 (S.D.N.Y. Feb. 24, 2020) (dismissing Section 349 claim for "alleged harms to startups and entrepreneurs"); *Fung-Schwartz*, 2018 U.S. Dist. LEXIS 156646, at *17 (dismissing Section 349 claim which alleged financial harm to a medical practice); *Forgione v. Gaglio*, 2015 U.S. Dist. LEXIS 21644, at *45-46 (S.D.N.Y. Feb. 13, 2015) (dismissing Section 349 claim arising from the establishment of a defined benefit pension plan "because Plaintiffs have not alleged that such plans were marketed or sold to non-business consumers"); *Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC*, 832 F. Supp. 2d 194, 204-05 (S.D.N.Y. 2010) (dismissing Section 349 claim relating to the provision of "software specifically designed for 'early intervention agencies,' not for consumers").

In short, Avi has failed to plead a plausible claim for violation of Section 349 or Section 350 of New York General Business Law.  Accordingly, the Court should dismiss the Third and Fourth Claims for Relief.

## C.    AVI'S CONTRACT-BASED CLAIMS SHOULD BE DISMISSED IN PART.

There are two critical flaws in Avi's contract-based claims that this Court can address at the pleading stage:  (i) Avi seeks damages far beyond those available under the parties' limitation of liability clause; and (ii) Avi seeks to enforce an implied warranty that was disclaimed by contract.  Whether North Carolina or New York law

11

applies to Avi's contract claims, the Court should dismiss the claim for breach of implied warranty of merchantability in its entirety, and dismiss the other contract claims to the extent they seek damages excluded by contract.

1.  <u>North Carolina Law Applies to Avi's Contract and Warranty Claims.</u>

The Agreement's choice-of-law clause specifies that North Carolina law governs the contract. *See* Dkt. 14-4 § 11.3. North Carolina has sufficient (and even dominant) contacts with the transaction at issue. The only location-based allegation in the Complaint is a meeting in North Carolina. *See* Compl. ¶¶ 13-15. Avi broadly complains about ChannelAdvisor's performance under the contract in providing services and a functional software platform, all of which occur at ChannelAdvisor's principal place of business in North Carolina. *See id.* ¶¶ 4, 32, 52. Therefore, the Court should enforce the mutually agreed choice-of-law clause provision. *See, e.g., McPhee v. GE Int'l, Inc.*, 736 F. Supp. 2d 676, 680 (S.D.N.Y. 2010) (where there is a "contract with an express choice of law provision . . . a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction").

As addressed below, however, North Carolina and New York apply the same principles in this context and ChannelAdvisor's motion should be granted under either state's law.[4]

---

[4]At this stage of the proceeding, the Court need not determine the applicability of UCC, Article 2, because this motion is premised on general principles applicable to contracts for both goods and services.

2.   <u>Avi's Contract-Based Claims For Consequential, Incidental, and Punitive Damages For Breach Of Contract And Breach of Express Warranty Should Be Dismissed.</u>

Avi's claims for breach of contract and breach of express warranty request incidental, consequential, and punitive damages.  *See* Compl. ¶¶ 33, 53.  Those types of damages are unavailable to Avi, and therefore that aspect of its claims should be dismissed.

In capital letters in a section boldly titled **LIABILITY LIMITATION**, the Agreement limits the measure of damages recoverable by either party from the other to the amounts paid by the customer in the preceding 12 months.  Specifically, the Agreement states:

> NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR ANY LOST PROFITS, LOSS OF DATA, OR ANY FORM OF INDIRECT, SPECIAL, INCIDENTAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES OF ANY CHARACTER FROM ANY CAUSES OF ACTION OF ANY KIND WITH RESPECT TO THIS AGREEMENT OR ANY APPLICABLE SOW, WHETHER BASED ON BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE), OR OTHERWISE, AND WHETHER OR NOT THE OTHER PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE. CHANNELADVISOR'S AGGREGATE LIABILITY UNDER THIS AGREEMENT OR APPLICABLE SOW WILL NOT EXCEED THE AMOUNTS PAID BY CUSTOMER UNDER THE APPLICABLE SOW GIVING RISE TO THE CLAIM DURING THE TWELVE MONTH PERIOD IMMEDIATELY BEFORE THE DATE THE CLAIM AROSE**.**

Dkt. 14-4 § 9.0.  Thus, the contract conspicuously and expressly excludes the types of damages Avi seeks in this action.

North Carolina and New York allow and enforce these contractual limitations and alterations of the measure of damages.  N.C. Gen. Stat. § 25-2-719(1)(a) ("the agreement . . . may limit or alter the measure of damages recoverable under this

article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts"); N.Y. U.C.C. Law § 2-719(1)(a) (same). "This policy of generally enforcing mutually-assented-to limitations on liability extends beyond the goods context." *Severn Peanut Co. v. Indus Fumigant Co.*, 807 F.3d 88, 92 (4th 2015) (citing *Hyatt v. Mini Storage on Green*, 763 S.E.2d 166, 171 (N.C. Ct. App. 2014) (enforcing contractual exclusion of liability for personal injury encountered on premises of self-storage facility)); *Lexington Ins. Co. v. Tires Into Recycled Energy & Supplies, Inc.*, 136 N.C. App. 223, 226-27, 522 S.E.2d 798, 801 (N.C. Ct. App. 1999) (enforcing lease provision limiting liability for fire damages covered by insurance)); *Electron Trading LLC v. Morgan Stanley Co. LLC,* 157 A.D.3d 579, 580-81, 69 N.Y.S.3d 633, 634-35 (1st Dept. 2018) (enforcing liability limitation capping damages to the "total amounts previously paid" in contract for consulting services and licensing agreement**)**.  Parties also may agree to limit or exclude consequential damages "unless the limitation or exclusion is unconscionable." *Severn Peanut Co.,* 807 F.3d at 91; N.Y. U.C.C. Law § 2-719(3) ("Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not."); *Warren W. Fane, Inc. v. Tri-State Diesel, Inc.*, 2014 U.S. Dist. LEXIS 62824, at *23-24 (N.D.N.Y May 7, 2014) (because warranty specifically disclaimed any incidental damages, the plaintiff could not recover on any breach of warranty claim).

14

Here, the contractual Liability Limitation on damages is allowed under North Carolina and New York law:  the damages are limited to recovery of the price paid. *See* N.C. Gen. Stat. § 25-2-719(1)(a) (permitting the "limit[ing] or alter[ing] the measure of damages recoverable to . . . repayment of the price"); N.Y. U.C.C. Law § 2-719(1)(a) (same).   Further, Avi has not asserted that the limitation is unconscionable or otherwise unenforceable, and has alleged no facts to support that position.

Accordingly, Avi's First and Fifth Claims for Relief should be dismissed to the extent they seek contractual damages that are premised on lost profits, consequential damages, punitive damages, or any sum that exceeds what it paid ChannelAdvisor in the twelve months preceding the claim.  *See, e.g., Kelly v. Georgia-Pacific, LLC*, 671 F. Supp. 2d 785, 798 (E.D.N.C 2009) (granting motion to dismiss claims that exceed the limitation specified in the contract); *TOA Sys., Inc. v. IBM*, 2019 U.S. Dist. LEXIS 191318, at *6-7 (S.D.N.Y. Nov. 4, 2019) (same).

       3.     <u>Avi's Claim For Breach Of Implied Warranty Of Merchantability Fails Because Any Implied Warranty Was Effectively Disclaimed.</u>

Avi's Sixth Claim for Relief for breach of implied warranty of merchantability should be dismissed because any such warranty has been disclaimed.

Under both North Carolina and New York law, "disclaimers of warranties and representations are permissible, and bar contract claims based on the alleged breach of those warranties and representations." *Roberts v. Weight Watchers Int'l, Inc.*, 217 F. Supp. 3d 742, 750 (S.D.N.Y. 2016); *see also Presnell v. Snap-On Securecorp Inc.*, 583 F. Supp. 3d 702, 712 (M.D.N.C. 2022) (dismissing claim for breach of implied

warranty of merchantability because of warranty disclaimer on defendant's website) (citing N.C. Gen. Stat. § 25-2-316(2) ("[T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous")).

The disclaimer in the Agreement is in writing and expressly refers to merchantability. *See* Dkt. 14-4 § 7.0 ("ChannelAdvisor makes no warranties, whether express or implied or statutory, with respect to the technology"); *see also id.* (disclaiming the "implied warranty of merchantability and warranties that the technology will operate uninterrupted, defect-free or error-free.").

The disclaimer is also conspicuous.[5]  In particular, it is "so written . . . that a reasonable person against [whom] it is to operate ought to have noticed it." *Presnell*, 583 F. Supp. 3d  at 712 (quoting N.C. Gen. Stat. § 25-1-201(b)(10));  NY U.C.C. Law § 1-201(10) (same).   The heading **DISCLAIMER OF WARRANTIES BY CHANNELADVISOR** appears in bold capitalized text, and the warranty disclaimer language is fully capitalized and in larger typeface than the other provisions of the 7-page document.   *See* Dkt. 14-4 § 7.0.   Courts have recognized that these characteristics render a disclaimer conspicuous. *Presnell*, 583 F. Supp. 3d  at 712-13 (citing cases); *Warren W. Fane, Inc.*, 2014 U.S. Dist. LEXIS 62824, at *30 ("Warranty

---

[5] Whether a term is "conspicuous" is a decision for the court. *Presnell*, 583 F. Supp. 3d  at 712; *Lake v. Ford Motor Co.*, 2019 U.S. Dist. LEXIS 143956, *12 (E.D.N.Y. Aug. 22, 2019) ("the disclaimer of warranties presents a question of law amenable to decision on a motion to dismiss").

disclaimers in all capital letters and specifying the warranties that are being disclaimed have been found valid." (cleaned up)).

Accordingly, Avi's claim for breach of implied warranty of merchantability is barred by the contractual disclaimer of any such warranty.  The claim should be dismissed.

## D.   AVI FAILS TO STATE TORT CLAIMS FOR NEGLIGENT MISREPRESENTATION OR FRAUDULENT INDUCEMENT.

### 1.   North Carolina Law Applies to Avi's Tort-Based Claims.

"In tort cases, New York applies the law of the state with the most significant interest in the litigation." *Kinsey*, 991 F.3d at 176 (cleaned up).  "In deciding how to weigh interests, New York distinguishes between conduct-regulating rules and loss-allocating rules." *Id.*  "Claims of fraud are conduct-regulating rules." *St. Francis Holdings, LLC v. MMP Capital, Inc.*, 2022 U.S. Dist. LEXIS 61008, *22-23 (E.D.N.Y. 2022) (collecting cases).  "In cases involving conduct-regulating laws, like fraudulent inducement, '[w]here the parties are domiciled in different states, the locus of the tort will almost always be determinative.'" *Id.* (quoted case omitted).

Here, Avi's bases its tort claims on ChannelAdvisor's alleged misrepresentations regarding the functionality of the Digital Marketing Module. *See* Compl. ¶¶ 61, 70.  ChannelAdvisor operates in North Carolina, *id.* ¶ 4, such that its conduct originates there.  Avi alleges that the misrepresentations regarding the functionality of its software platform and the Digital Marketing Module occurred at a meeting in North Carolina. *Id.* ¶¶ 13-15.  North Carolina therefore has the most significant interest in the conduct alleged, and its law should apply in the event of

17

any conflict between the laws of New York and North Carolina.

As addressed below, however, New York and North Carolina apply the same relevant principles in this context.[6]   Therefore, Plaintiff's claims for fraudulent inducement and negligent misrepresentation should be dismissed regardless of whether New York or North Carolina law applies to those claims.

> 2.   Avi's Claims For Negligent Misrepresentation and Fraudulent Inducement Fail to Allege Breach of Any Non-Contractual Duty.

Under North Carolina and New York law, "to pursue a tort claim and a breach of contract claim concerning the same conduct, a plaintiff must allege a duty owed him by the defendant separate and distinct from any duty owed under a contract." *Blackman v. Boston Whaler, Inc.*, 2023 U.S. Dist. LEXIS 1503, *15 (E.D.N.C. Jan. 5, 2023) (cleaned up) (collecting cases); *Dillon v. The Leazer Group, Inc.*, 374 F. Supp. 3d 547, 557 (E.D.N.C. 2019) ("North Carolina law requires courts to limit plaintiffs' tort claims to only those claims which are identifiable and distinct from the primary breach of contract claim") (quoted case omitted); *Lasalle Bank Nat'l Assoc. v. Citicorp Real Estate, Inc.*, 2003 U.S. Dist. LEXIS 4315, *9-10 (S.D.N.Y. Mar. 21, 2003) ("Under New York law a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated.") (quoted case omitted)). Applying this general principle, North Carolina and New York courts require a

---

[6]If New York law applies, Avi's negligent misrepresentation claim fails for the additional reason that Avi did not allege facts to establish a "special relationship" between Avi and ChannelAdvisor.  *See, e.g., Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 587-88 (S.D.N.Y. 2021) (reciting negligent misrepresentation elements and recognizing that the common relationship of buyer-seller is generally not a special relationship).  Unlike New York, North Carolina law requires a "special relationship" only when the alleged misrepresentation is an omission, not an affirmative representation.

plaintiff pursuing a breach of contract claim along with a fraud-based claim to allege a legal duty that is separate from the contract or a misrepresentation that is extraneous to the contract.  *See, e.g., Dillon,*  374 F. Supp. 3d at 558 (granting Rule 12 motion to dismiss where the "asserted misrepresentations or concealed facts . . . are asserted as a basis for plaintiff's breach of contract claim"); *see also LCO Destiny, LLC v. Michaels Stores, Inc.*, 543 F. Supp. 2d 129, 133 (S.D.N.Y 2008) (granting Rule 12 motion to dismiss because the allegations in the Complaint asserting a fraudulent representation were not "*distinct* from the promise to perform under the alleged contract," but rather were "one and the same"); *Id.* (citing *Town of Haverstraw v. Columbia Electric Corp.*, 237 F. Supp. 2d 452, 456 (S.D.N.Y. 2002) for the proposition that "a fraud claim is viable where a plaintiff is induced to enter a contract based on extraneous representations but not where the misrepresentation is merely the promise to perform under a contract").

Avi did not allege any duty that gives rise to an independent tort claim, or any factual misrepresentation that is extraneous to the contract.  Rather, it alleges that ChannelAdvisor did not provide a functional software platform and Digital Marketing Module as required by the Agreement between the parties. *See* Compl. ¶¶ 61, 73-74.  These allegations simply restate Avi's breach of contract claim, *i.e.*, ChannelAdvisor and Avi entered an Agreement that governed the services and use of the Digital Marketing Module and ChannelAdvisor did not fulfill its obligations under the Agreement.  *See, e.g.,* Compl. ¶ 1 (alleging "failure to abide by its agreement to provide a working platform that combines multiple marketplaces in one unified

platform"); *id.* ¶ 32 ("By failing to provide the services due and owing pursuant to the Agreement, ChannelAdvisor intentionally breached the Agreement").

In short, Avi's negligent misrepresentation and fraudulent inducement claims simply duplicate its breach of contract claim, and they should be dismissed.

3.   <u>Avi's Claim For Fraudulent Inducement Fails to Allege Scienter.</u>

A "fraud claim should plead scienter, and although it may do so generally, the plaintiff must still allege facts that give rise to a strong inference of fraudulent intent." *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 472 (S.D.N.Y. 2020) (cleaned up) (quoting *B&M Linen Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d. 474, 481 (S.D.N.Y. 2010)).  A plaintiff may demonstrate this inference by (1) "alleging facts to show that defendants had both motive and opportunity to commit fraud," or (2) "by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  *Id.* (quoted case omitted).

Avi has not pleaded any facts that give rise to any inference of conscious misbehavior or recklessness.  Its claim therefore fails and should be dismissed.

4.   <u>Avi's Mistake or Fraud-Based Claims Fail to Satisfy Rule 9(b)'s Heightened Pleading Standard.</u>

Even if Avi had stated a cognizable claim for negligent misrepresentation or fraudulent inducement (which it has not), the Court still should dismiss those claims because Avi failed to plead them with particularity as required by Rule 9(b).

Avi's negligent misrepresentation and fraudulent inducement claims are subject to Rule 9(b).  *See, e.g., Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 246-247 (S.D.N.Y. 2011) ("Fraudulent inducement claims are subject to the

heightened pleading standards of Federal Rule of Civil Procedure 9(b) . . . ."); *Woori Bank v. RBS Sec., Inc.*, 910 F. Supp. 2d 697, 705 (S.D.N.Y. 2012) ("District courts in this Circuit have concluded that the Rule is applicable to negligent misrepresentation claims that are premised on fraudulent conduct."). Rule 9(b) requires that a plaintiff: "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent; (2) identify the speaker; (3) state where and when the statements (or omissions) were made; and (4) explain why the statements (or omissions) are fraudulent." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (quoted case omitted); *see also Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001) (holding that in order to plead fraud with particularity, a complaint must "specify the time, place, speaker, and content of the alleged misrepresentations" and "should explain how the misrepresentations were fraudulent"). Allegations that are "conclusory and unsupported by assertions of fact" are not sufficient to meet the Rule 9(b) standard. *See, e.g., Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir.1986).

Avi's claims for negligent misrepresentation and fraudulent inducement suffer from multiple pleading defects. First, Avi does not identify the alleged speaker. Second, Avi does not specify when the alleged misrepresentations were made: it does not allege any day, month, or year. Third, Avi does not detail the alleged negligent misrepresentation, but rather topically categorizes it as "representations that its Digital Marketing Module combined multiple marketplaces into a single platform," *see id.* ¶ 61, without explaining how that statement was false, *id.* ¶¶ 60-67. Similarly, for its fraudulent inducement claim, Avi broadly describes ChannelAdvisor's

allegedly false statement (made by an unspecified person at an unspecified time) as a representation that "its digital marketing device will streamline sales for Plaintiff and make Plaintiff more profitable." *See id.* ¶ 70. Even if such a statement of future increased productivity and profitability could serve as a basis for a fraud claim,[7] Avi does not explain how the statement was false. Instead, Avi broadly asserts that it did not "receive . . . a single platform that eliminated the need to juggle inventory on multiple marketplaces." *Id.* ¶ 73. Thus, neither Avi's negligent misrepresentation claim nor its fraudulent inducement claim adequately allege the "who, what, when, where and how" required by Rule 9(b).

In summary, Avi's Seventh and Eighth Claims for Relief should be dismissed for failure to state a claim or, alternatively, because they fail to meet the heightened pleading standard required by Rule 9(b).

## E.   AVI'S UNJUST ENRICHMENT CLAIM FAILS BECAUSE THERE IS A CONTRACT BETWEEN THE PARTIES.

North Carolina and New York generally recognize claims for unjust enrichment when the defendant was enriched at the plaintiff's expense under circumstances when it is equitable to require restitution. *See, e.g. Hidalgo v. Johnson & Johnson Consumer Cos*, 148 F. Supp. 3d 285, 295 (S.D.N.Y. 2015) (reciting New York unjust enrichment elements); *see also Metric Constructors, Inc. v. Bank of*

---

[7] *Cf. Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994) (a forward-looking opinion statement that does not come to fruition is "sufficient to allege that the defendants were wrong; but misguided optimism is not a cause of action, and does not support an inference of fraud."); *also Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) ("We have refused to allow plaintiffs to proceed with allegations of 'fraud by hindsight.'")

*Tokyo-Mitsubishi, Ltd.*, 72 Fed. App'x 916, 920 (4th Cir. 2003) (reciting North Carolina unjust enrichment principles).  However, where a contract exists between the parties, a claim for unjust enrichment does not lie. *See Hidalgo*,.148 F. Supp. 3d at 295 ("an unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim."); *McManus v. GMRI, Inc.*, 2012 U.S. Dist. LEXIS 92094, *24 (W.D.N.C. July 3, 2012) (dismissing unjust enrichment claim and recognizing that a claim for unjust enrichment may not be brought under North Carolina law "in the face of an express contractual relationship between the parties" (citation omitted)).  Moreover, "claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other cause of action." *Gill v. NFL*, 2021 U.S. Dist. LEXIS 211887, *21 (S.D.N.Y. Nov.2, 2021) (quoting *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017)).

Avi pleads the existence of a "valid and binding contract" between the parties. Compl. ¶¶ 1, 12, 15, 29-34 (alleging contractual relationship); *id.* ¶ 35 (incorporating its preceding allegations, including those that allege the existence of a contract, into its Second Claim for Relief for unjust enrichment).  Further, ChannelAdvisor acknowledges and has supplied the Court with the Agreement and its Amendments that form the basis of Avi's Complaint. *See* Dkt. 14-1 – 14-7.  Because there is a contract between the parties, Avi fails to state a claim for unjust enrichment.

Additionally, Avi's sparse allegations in support of its unjust enrichment claim reveal that the claim is entirely duplicative of Avi's contract claim.  It is based on the

23

same alleged conduct, Compl. ¶ 36 ("as a result of the conduct described above," referring to Avi's breach of contract claim), and seeks the same relief as sought in its contract claim, *id.* ¶¶ 33, 38.

Accordingly, even when Avi's allegations are accepted as true, it fails to state a claim for unjust enrichment. The claim should be dismissed. *See also Jurgensen v. Felix Storch, Inc.*, 2012 U.S. Dist. LEXIS 86312, at *6 (S.D.N.Y. June 14, 2012) (a complaint which makes only 'threadbare recitals' of a claim for unjust enrichment should be dismissed).

## IV.   CONCLUSION

ChannelAdvisor respectfully requests that the Court grant its motion and dismiss Avi's Second Claim for Relief (unjust enrichment), Third Claim for Relief (deceptive trade practices pursuant to New York General Business Law § 349), Fourth Claim for Relief (false advertising pursuant to New York General Business Law § 350), Sixth Claim for Relief (breach of implied warranty of merchantability), Seventh Claim for Relief (negligent misrepresentation), and Eighth Claim for Relief (fraudulent inducement).   With respect to the First Claim for Relief (breach of contract) and the Fifth Claim for Relief (breach of express warranty), ChannelAdvisor requests that the Court dismiss Avi's demand for an award of damages that are expressly excluded by the Agreement (lost profits and any form of indirect, special, incidental, punitive, or consequential damages) and for damages in an amount that exceeds the contractual cap limiting total damages to the amounts paid by Avi in the twelve months preceding the claim.

24

Dated:  March 2, 2023                    Respectfully submitted,

                                         MORNINGSTAR LAW GROUP

                                          /s/ *Jeffrey L. Roether*
                                         Jeffrey L. Roether
                                         jroether@morningstarlawgroup.com
                                         700 W. Main St.
                                         Durham, NC  27701
                                         Telephone: (919) 590-0368
                                         Facsimile:  (919) 882-8890

                                         *Attorneys for Defendant ChannelAdvisor*
                                         *Corporation*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing Memorandum of Law in Support of Defendant ChannelAdvisor Corporation's Motion to Dismiss was this day served on all counsel of record via the Court's electronic filing system.

Dated:  March 2, 2023.


MORNINGSTAR LAW GROUP


    _/s/ *Jeffrey L. Roether*_____