UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

 AVI & CO NY CORP.,

                                **Case No.:** 1:22-cv-10599 (PAE) (SLC)

                    Plaintiff,

         -against-

CHANNELADVISOR CORPORATION,

                   Defendant.
-----------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
<u>DEFENDANTS' MOTION TO TRANSFER AND FOR DISMISSAL</u>**

**MILMAN LABUDA LAW GROUP PLLC**

Emanuel Kataev, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 328-8899 (office)
(516) 328-8899 (office)
emanuel@mllaborlaw.com

*Attorneys for Plaintiff*
*Avi & Co NY Corp.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

STATEMENT OF RELEVANT FACTS................................................................3

STANDARD OF REVIEW ....................................................................................4

ARGUMENT ..........................................................................................................7

I.      TRANSFERRING TO EDNC WOULD DEPRIVE AVI & CO OF ITS DAY
        IN COURT................................................................................................7

II.     THE MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM MUST
        BE DENIED............................................................................................13

        A. Plaintiff States Claims for Violations of the General Business Law .....................13

        B. The Liability Limitation Provision is Unenforceable as Unconscionable .............15

        C. The Disclaimer of Implied Warranties is Unenforceable.......................................16

        D. Avi & Co States Claims for Negligent Misrepresentation & Fraudulent
        Inducement ...........................................................................................................18

        E. Avi & Co States a Claim for Unjust Enrichment....................................................20

I.      LEAVE TO REPLEAD SHOULD BE GRANTED IF ANY CLAIM IS
        DISMISSED............................................................................................21

CONCLUSION ....................................................................................................21

# TABLE OF AUTHORITIES

**Cases**

Am. Dev. Grp., LLC v. Island Robots of Fla.,
    No. 17-CIV.-3223, 2019 WL 5790265 (E.D.N.Y. Oct. 4, 2019) .................................... 17

Am. Dev. Grp., LLC v. Island Robots of Fla.,
    No. 17-CIV.-3223, 2019 WL 5788319 (E.D.N.Y. Nov. 6, 2019) .................................... 17

Amardeep Garments Indus., Pvt. Ltd. v. Cathay Bank,
    No. 10-CIV.-2429 (BSJ), 2011 WL 1226255 (S.D.N.Y. Mar. 23, 2011)................. 11 n. 4

AMTO, LLC v. Bedford Asset Mgmt., LLC,
    168 F. Supp. 3d 556 (S.D.N.Y. 2016)................................................................................. 6

Arrow Electronics v. Ducommun, Inc.,
    724 F. Supp. 264 (S.D.N.Y. 1989) ..................................................................................... 7

Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.,
    571 U.S. 49 (2013)............................................................................................................. 6

Barreto v. Westbrae Nat., Inc.,
    518 F. Supp. 3d 795 (S.D.N.Y. 2021)........................................................................ 13 n. 5

Barrie House Coffee Co. v. Teampac, LLC,
    No. 13-CIV.-8230 (VB), 2016 WL 3645199 (S.D.N.Y. June 30, 2016)......................... 15

Bennett v. Sterling Planet, Inc.,
    No. 09-CV-1176 (GLS) (DRH), 2010 WL 11566003 (N.D.N.Y. Mar. 22, 2010) ............ 9

Billing v. Commerce One, Inc.,
    186 F. Supp. 2d 375 (S.D.N.Y. 2002)................................................................................ 7

Bremen v. Zapata Off-Shore Co.,
    407 U.S. 1 (1972)............................................................................................................... 6

Cayuga Harvester, Inc. v. Allis-Chalmers Corp.,
    465 N.Y.S.2d 606 (4th Dept. 1983) ................................................................................. 15

Clayton v. Katz,
    No. 10-CIV.-5755, 2012 WL 4378035 (S.D.N.Y. Sep. 25, 2012) ................................... 13

Computer Express Intern., Ltd., Digital Data Devices, Inc.,
    No. 01-CIV.-4801, 2001 WL 1776162 (E.D.N.Y. Dec. 21, 2001)..................................... 9

Construction Tech., Inc. v. Lockformer Co., Inc.,
    704 F. Supp. 1212 (S.D.N.Y. 1989)................................................. 14

Cortec Indus., Inc. v. Sum Holding L.P.,
    949 F.2d 42 (2d Cir. 1991)........................................................ 21

Cosgrove v. Oregon Chai, Inc.,
    520 F. Supp. 3d 562 (S.D.N.Y. 2021)................................... 13 n. 5

County of Nassau v. Expedia, Inc.,
    120 A.D.3d 1178 (2d Dept 2014) .............................................. 20

Cruz v. TD Bank, N.A.,
    742 F.3d 520 (2d Cir. 2013)....................................................... 21

D.H. Blair & Co., Inc. v. Gottdiener,
    462 F.3d 95 (2d Cir. 2006)...................................................... 4, 7

Defenshield Inc. v. First Choice Armor & Equip.,
    No. 10-CIV.-1140, 2012 WL 1069088 (N.D.N.Y. Mar. 29, 2012) ................... 8

Doe v. McAdam Fin. Group LLC,
    No. 22-CIV.-113 (SN), 2022 WL 3579700 (S.D.N.Y. Aug. 3, 2022)............... 7

Doe v. McAdam Fin. Group LLC,
    No. 1:22-CV-113 (GHW), 2022 WL 3578569 (S.D.N.Y. Aug. 19, 2022) ....... 7

Duran v. Henkel of Am., Inc.,
    450 F. Supp. 3d 337 (S.D.N.Y. 2020)....................................... 13 n. 5

EasyWeb Innovations, LLC v. Facebook, Inc.,
    888 F. Supp. 2d 342 (E.D.N.Y. 2012) ........................................... 7

Elliot-Leach v. New York City Dep't of Educ.,
    201 F. Supp. 3d 238 (E.D.N.Y. 2016) .......................................... 21

Elliot-Leach v. New York City Dep't of Educ.,
    710 Fed. Appx. 449 (2d Cir. 2017)............................................... 21

Enthone Inc. v. Moses Lake Industries, Inc.,
    No.: 1:13-CIV.-1054 (TJM) (RFT), 2014 WL 12587065 (N.D.N.Y. Apr. 10, 2014).... 8, 9

ESPN, Inc. v. Quiksilver, Inc.,
    581 F. Supp. 2d 542 (S.D.N.Y. 2008)........................................... 10

Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.,
    375 F.3d 168 (2d Cir. 2004)..................................................................................... 19

Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.,
    928 F. Supp. 2d 735 (S.D.N.Y. 2013).................................................................... 11

Exch. Listing, LLC v. Inspira Techs., Ltd.,
    No. 22-CIV.-1889 (KPF), 2023 WL 2403223 (S.D.N.Y. Mar. 8, 2023)........................ 18

Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.,
    415 F. Supp. 2d 370 (S.D.N.Y. 2006).................................................................... 10

Goshen v. Mut. Life Ins. Co. of N.Y.,
    98 N.Y.2d 314 (2002) ........................................................................... 13 n. 5, 14

IDT Corp v. Morgan Stanley Dean Witter & Co.,
    12 N.Y.3d 132 (2009) ......................................................................................... 20

In re Collins & Aikman Corp. Sec. Litig.,
    438 F. Supp. 2d 392 (S.D.N.Y. 2006)...................................................................... 4

In re Cuyahoga Equip. Corp.,
    980 F.2d 110 (2d Cir. 1992).................................................................................... 4

Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.,
    419 F. Supp. 2d 395 (S.D.N.Y. 2005)................................................................ 5, 10

Indian Harbor Ins. Co. v. NL Envtl. Mgt. Services, Inc.,
    No. 12-CIV.-2045 (PGG), 2013 WL 1144800 (S.D.N.Y. Mar. 19, 2013) ....................... 7

Koch v. Acker, Merrall & Condit Co.,
    18 N.Y.3d 940 (2012) ......................................................................................... 13

Lenard v. Design Studio,
    889 F. Supp. 2d 518 (S.D.N.Y. 2012).................................................................... 14

Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,
    797 F.3d 160 (2d Cir. 2015)................................................................................. 21

M.V.B. Collision Inc. v. State Farm Mut. Automobile Ins. Co.,
    No. 19-CIV.-1883(JS) (ARL), 2020 WL 830829 (E.D.N.Y. Feb. 20, 2020) .................. 15

Maltz v. Union Carbide Chems. & Plastics Co.,
    992 F. Supp. 286 (S.D.N.Y. 1998) ........................................................................ 15

Martinez v. Bloomberg LP,
    740 F.3d 211 (2d Cir. 2014)..................................................................... 5, 6

Martino v. MarineMax Ne., LLC,
    No. 17-CIV.-4708, 2018 WL 6199557 (E.D.N.Y. Nov. 28, 2018) ................................. 17

McKenzie-Morris v. V.P. Records Retail Outlet, Inc.,
    No. 1:22-CIV.-1138 (GHW), 2022 WL 18027555 (S.D.N.Y. Dec. 30, 2022)................. 21

McNally Wellman Co. v. New York State Electric & Gas Corp.,
    63 F.3d 1198 (2d Cir. 1995)..................................................................... 16

Mitsui Marine & Fire Ins. Co. v. Nankai Travel Int'l Co.,
    245 F. Supp. 2d 523 (S.D.N.Y. 2003)........................................................ 11 n. 4

Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. St. Paul Fire & Marine Ins. Co.,
    No. 12-CIV-1250 (PKC) (RCE), 2012 WL 1829589 (S.D.N.Y. May 11, 2012) ...... 11 n. 4

Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Wynn Las Vegas, LLC,
    509 F. Supp. 3d 38 (S.D.N.Y. 2020)........................................................... 5

Nomination Di Antonio E Paolo Gensini S.N.C. v. H.E.R. Accessories Ltd.,
    2009 WL 4857605 (S.D.N.Y. Dec. 14, 2009) ................................................... 13

NY Drilling, Inc. v. TJM, Inc. LLC,
    573 F. Supp. 3d 854 (E.D.N.Y. 2021) ........................................................... 17

Republic of Guatemala v. IC Power Asia Dev. Ltd.,
    No. 1:22-CV-00394 (CM), 2022 WL 3139949 (S.D.N.Y. Aug. 5, 2022)..................... 12

Rosen v. Spanierman,
    894 F.2d 28 (2d Cir. 1990)....................................................................... 18

Rossi v. Ferring Pharm.,
    No. 3:15-CV-01367 (VLB), 2016 WL 593440 (D. Conn. Feb. 12, 2016) ..................... 11

Scalercio-Isenberg v. Goldman Sachs Mortg. Co.,
    No. 21-CIV.-4124 (KPF), 2022 WL 3227875 (S.D.N.Y. Aug. 9, 2022) ........................ 18

Semente v. Empire Healthchoice Assurance, Inc.,
    No. 14-CIV.-5644 (JMF), 2014 WL 4967193 (S.D.N.Y. Sep. 29, 2014) ........................ 4

SingularDTV GmbH v. LeBeau,
    No. 21-CIV.-10130, 2022 WL 6771081 (S.D.N.Y. Oct. 11, 2022)................................ 4

Spinal Techs., LLC v. Mazor Robotics Inc.,
    No. 21-CIV.-883S, 2022 WL 3867742 (W.D.N.Y. Aug. 30, 2022)................................ 16

Stein v. Teekay Corp.,
    No. 16-CIV.-00345, 2016 WL 10490287 (D. Conn. Nov. 18, 2016)................................ 5

Student Advantage, Inc. v. Int'l Student Exch. Cards, Inc.,
    No. 00-CIV.-1971 (AGS), 2000 WL 1290585 (S.D.N.Y. Sept. 13, 2000)........................ 5

Synca Direct Inc. v. SCIL Animal Care Co.,
    No. 15-CIV.-2332, 2015 WL 3883281 (S.D.N.Y. June 22, 2015) .................................... 5

U.S. v. Stein,
    No. 20-CIV.-4716 (LJL), 2007 WL 3009650 (S.D.N.Y. Oct. 15, 2007) .................... 8 n. 2

Vacold LLC v. Cerami,
    No. 00-CIV.-4024 (AGS), 2002 WL 193157 (S.D.N.Y. Feb. 6, 2002)........................... 21

Van Dusen v. Barrack,
    376 U.S. 612 (1964) ..................................................................................................... 4

Waverly Props., LLC v. KMG Waverly, LLC,
    824 F. Supp. 2d 547 (S.D.N.Y. 2011)........................................................................ 16

Weight Watchers Int'l, Inc. v. Stouffer Corp.,
    744 F. Supp. 1259 (S.D.N.Y. 1990)........................................................................... 14

Wynn v. Topco Assocs., LLC,
    No. 19-CIV.-11104, 2021 WL 168541 (S.D.N.Y. Jan. 19, 2021) ............................ 13 n. 5

Xiu Feng Li v. Hock,
    371 Fed. Appx. 171 (2d Cir. 2010) .............................................................................. 4

**Statutes**

28 U.S.C. § 1404.................................................................................................... 1, 4, 11

New York General Business Law § 349.................................................... 13, 13 n. 5, 14

New York General Business Law § 350.................................................................. 13 n. 5

New York Uniform Commercial Code § 2-719.. ................................................... 15, 16

**Rules**

Fed. R. Civ. P. 8 .................................................................................................. 18, 20

Fed. R. Civ. P. 12 ........................................................................................... 1, 4 n. 1, 6

Fed. R. Civ. P. 45 ...................................................................................................... 7

## PRELIMINARY STATEMENT

Plaintiff Avi & Co NY Corp. (hereinafter "Plaintiff" or "Avi & Co") respectfully submits this Memorandum of Law in opposition to Defendant ChannelAdvisor Corporation's (hereinafter "Defendant" or "ChannelAdvisor") motions pursuant to 28 U.S.C. § 1404(a) to transfer venue from the United States District Court for the Southern District of New York ("SDNY") to the United States District Court for the Eastern District of North Carolina ("EDNC"), and to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (hereinafter referred to as "Rules" or "Rule").

While Defendant's forum selection clause may, on its face, be valid and enforceable, its enforcement would be unreasonable and unjust, as it would deprive Plaintiff of the ability to compel the testimony of a crucial witness – Joe Cohen ("Mr. Cohen") – who was the Director of Operations at Avi & Co until his separation from employment with Avi & Co in December 2021.

Mr. Cohen negotiated the agreement with Channel Advisor on behalf of Avi & Co, and oversaw ChannelAdvisor's work throughout its business relationship with Avi & Co.  Because he is no longer in the employ of Avi & Co, his testimony will have to be compelled by subpoena. As a result, and since Avi & Co's records show his last known address is in Long Island City, New York in Queens County, he cannot be compelled to appear in court in North Carolina, over five hundred (500) miles away.

Without the ability to compel the testimony of Mr. Cohen, Avi & Co will be deprived of its day in court, and will be effectively hampered from supporting its claims.  Accordingly, even if valid, this Court should decline to exercise its discretion to transfer venue to the EDNC.

Separately, Defendants' motion to dismiss for failure to state a claim must be denied in its entirety.

1

First, there is no question that Defendant's conduct was consumer-oriented such that Plaintiff states a claim under the New York General Business Law ("GBL"). ChannelAdvisor product promises to seamlessly manage multiple online marketplaces in a single unified platform. When the price of a product is changed in its platform, it is supposed to be automatically changed on all the marketplaces that product is simultaneously placed on and available for sale at, such as eBay, Amazon, and similar websites. Similarly, when a product is sold on one of the marketplaces, that item should automatically be removed from the other marketplaces. This never happened because Plaintiff's product never worked, and caused widespread harm to not only Avi & Co, but all of its customers and prospective patrons on various websites both worldwide and in the State of New York. As such, Plaintiff states a claim under the GBL.

Second, Defendant's liability limitation provision is unenforceable as unconscionable because it fails in its essential purpose and because Defendant engaged in bad faith by providing a product that fails to work as promised.

Third, Defendant's disclaimer of implied warranties is unenforceable because it is not conspicuous and was buried in a document that was incorporated by reference in the agreement Plaintiff signed with no reference to the disclaimer immediately preceding the signature line. Courts have declined to enforce inconspicuous provisions such as the one in the agreements here.

Fourth, Plaintiff adequately states its fraud claims because: (i) Defendant's promise to make Plaintiff more profitable is extraneous to the parties' contract; (ii) it is permitted to plead this claim in the alternative; and (iii) it adequately describes the who, what, when, where, why, and how concerning the statements Defendant made and why they are fraudulent.

Fifth, Plaintiff adequately states its unjust enrichment claim because the elements of such a claim are pled, as set forth below, and Plaintiff is permitted to plead this claim in the alternative.

Finally, to the extent this Court finds that any claim should be dismissed, Plaintiff respectfully requests leave to replead, which should be freely granted as justice so requires.

## STATEMENT OF RELEVANT FACTS

In or about late January 2019, Avi & Co entered into an agreement with ChannelAdvisor to provide various services.  <u>See</u> Declaration of Karen Ali (hereinafter "<u>Ali Decl.</u>") ¶ 4; <u>see also</u> ECF Docket Entries 14-1, 14-2, 14-3, 14-4, 14-5, 14-6, and 14-7.   The signatory to every agreement between the parties on behalf of Avi & Co was Mr. Cohen.  <u>Id.</u> Mr. Cohen  separated from employment with Avi & Co in December 2021.  <u>Id.</u> at ¶ 5.  His last known address on file with Avi & Co indicates that he resides in Long Island City, New York in the County of Queens, which is five-hundred-ten (510) miles away from the EDNC courthouse in Raleigh, North Carolina.  <u>Id.</u> at ¶¶ 6, 8-10, Exhibit ("<u>Ex.</u>") A.

Mr. Cohen's testimony is crucial in this case; he was flown out by the Defendant to their headquarters in North Carolina and had numerous discussions with the Defendant concerning the services they provide.  <u>Id.</u> at ¶¶ 12-13.  Moreover, there exists documentary evidence in Avi & Co's possession that establishes Mr. Cohen was dissatisfied with the services ChannelAdvisor provided because they did not work as advertised from early on when the parties first entered into an agreement in early 2019.  <u>Id.</u> at ¶¶ 14-15.  Because he is no longer employed by Avi & Co, his testimony will have to be compelled, and this cannot be done if this case is transferred to EDNC. <u>Id.</u> at ¶¶ 7, 16-17.  In addition, attempts to contact Mr. Cohen have not been fruitful, and to Avi & Co's knowledge, Mr. Cohen has secured employment elsewhere such that it is unlikely he will be able to travel to North Carolina without being adversely impacted.  <u>Id.</u>   If any ChannelAdvisor witness would be burdened appearing in New York, Avi & Co has no objection to virtual appearances for depositions and – with the Court's permission – at trial.  <u>Id.</u> at ¶¶ 18-20.

## STANDARD OF REVIEW[1]

District courts may transfer a civil action "[f]or the convenience of the parties and witnesses, in the interest of justice." See 28 U.S.C. § 1404(a); see also Semente v. Empire Healthchoice Assurance, Inc., No. 14-CIV.-5644 (JMF), 2014 WL 4967193, at *1 (S.D.N.Y. Sep. 29, 2014). "[T]he purpose of [this] section is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." See Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (citation and quotation marks omitted).

On a motion to transfer, "the burden is on the movant to show that the transfer is justified — Absent a clear and convincing showing that the *balance of convenience* strongly favors the alternate forum ... discretionary transfers are not favored." See Xiu Feng Li v. Hock, 371 Fed. Appx. 171, 175 (2d Cir. 2010) (emphasis added). "[M]otions for transfer lie within the broad discretion of the district court and are determined upon *notions of convenience and fairness* on a case-by-case basis." See In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir. 1992) (emphasis added). When considering a motion to transfer, courts must "[f]irst ... determine whether the action sought to be transferred is one that 'might have been brought' in the transferee court." See In re Collins & Aikman Corp. Sec. Litig., 438 F. Supp. 2d 392, 394 (S.D.N.Y. 2006) (internal citations omitted). Courts next consider: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties." See D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106–07 (2d Cir. 2006) (quotation omitted).

---

[1] Plaintiff focuses on the standard for Defendant's motion to transfer, and does not dispute the well-accepted pleading standards set forth by Defendant concerning its Rule 12(b)(6) motion.

"Courts also routinely consider judicial economy, the interest of justice, and 'the comparative familiarity of each district with the governing law.'" See Stein v. Teekay Corp., No. 16-CIV.-00345, 2016 WL 10490287, at *1 (D. Conn. Nov. 18, 2016) (citing Synca Direct Inc. v. SCIL Animal Care Co., No. 15-CIV.-2332, 2015 WL 3883281, at *1 (S.D.N.Y. June 22, 2015)). However, "[t]here is no rigid formula for balancing these factors and no single one of them is determinative." See Indian Harbor Ins. Co. v. Factory Mut. Ins. Co., 419 F. Supp. 2d 395, 402 (S.D.N.Y. 2005) (citations omitted).

To determine whether a forum selection clause is enforceable, the Court must ask: (1) "whether the clause was reasonably communicated to the party resisting enforcement"; (2) whether the clause is "mandatory or permissive," i.e., whether the parties "are required to bring any dispute to the designated forum or simply permitted to do so"; and (3) "whether the claims and parties involved in the suit are subject to the forum selection clause." See Martinez v. Bloomberg LP, 740 F.3d 211, 217 (2d Cir. 2014). "If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable." Id. A party may only overcome this presumption by "making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." Id. To rebut a presumption that a forum selection clause is valid, a party must show that: (1) the forum selection clause's incorporation was the result of fraud or overreaching, (2) the law to be applied in the selected forum is fundamentally unfair, (3) enforcement contravenes a strong public policy of the forum in which suit is brought, *or* (4) *trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court*. See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Wynn Las Vegas, LLC, 509 F. Supp. 3d 38 (S.D.N.Y. 2020) (emphasis added).

A forum selection clause is unreasonable if, among other reasons, the selected forum is so "gravely difficult and inconvenient" that the complaining party will "for all practical purposes be deprived of its day in court" or enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought, in this case New York. See Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 18 (1972).

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum *non conveniens*." See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex., 571 U.S. 49, 60 (2013). In deciding a motion to dismiss based on a forum-selection clause, "a district court typically relies on pleadings and affidavits," unless disputed facts exist that would require an evidentiary hearing. See Martinez, 740 F.3d at 216-17 (2d Cir. 2014).

Where a defendant moves for dismissal under Federal Rule of Civil Procedure 12(b)(3) based on a forum-selection clause, a court may "treat their motion as a motion to dismiss for forum *non conveniens*." See SingularDTV GmbH v. LeBeau, No. 21-CIV.-10130, 2022 WL 6771081, at *3 (S.D.N.Y. Oct. 11, 2022); see also Martinez, 740 F.3d at 214, 216 (affirming dismissal under forum *non conveniens* where the defendant moved under Rule 12(b)(3)); AMTO, LLC v. Bedford Asset Mgmt., LLC, 168 F. Supp. 3d 556, 563 n.8 (S.D.N.Y. 2016) (construing motion "to enforce the forum-selection clause under [Rule] 12(b)(3) ... as proceeding under the forum *non conveniens* doctrine").

"The overriding framework governing the effect of forum selection clauses in federal courts ... is drawn from federal law." See Martinez, 740 F.3d at 217  To determine whether to enforce a forum-selection clause, i.e., step four of the analysis, courts apply federal law. See Id.

## ARGUMENT

## I.    TRANSFERRING TO EDNC WOULD DEPRIVE AVI & CO OF ITS DAY IN COURT

Rule 45 generally prohibits a Court from issuing a subpoena that would compel a non-party witness to travel more than one hundred (100) miles. <u>See</u> <u>Doe v. McAdam Fin. Group LLC</u>, No. 22-CIV.-113 (SN), 2022 WL 3579700, at *11 (S.D.N.Y. Aug. 3, 2022), <u>report and recommendation adopted</u>, No. 1:22-CV-113 (GHW), 2022 WL 3578569 (S.D.N.Y. Aug. 19, 2022); <u>see also</u> <u>EasyWeb Innovations, LLC v. Facebook, Inc.</u>, 888 F. Supp. 2d 342, 354 (E.D.N.Y. 2012); Fed. R. Civ. P. 45(c)(3)(A)(ii).

Crucially, "'[t]he availability of process to compel the testimony of important witnesses is an important consideration in transfer motions.'" <u>See</u> <u>Indian Harbor Ins. Co. v. NL Envtl. Mgt. Services, Inc.</u>, No. 12-CIV.-2045 (PGG), 2013 WL 1144800, at *10 (S.D.N.Y. Mar. 19, 2013) (<u>citing</u> <u>Billing v. Commerce One, Inc.</u>, 186 F. Supp. 2d 375, 378 (S.D.N.Y. 2002) (<u>quoting</u> <u>Arrow Electronics v. Ducommun, Inc.</u>, 724 F. Supp. 264, 266 (S.D.N.Y. 1989)).

"District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." <u>See</u> <u>D.H. Blair & Co.</u>, 462 F.3d at 106.

Here, Mr. Cohen resides and works more than one hundred (100) miles away from the EDNC. <u>See</u> <u>Ali</u> <u>Decl.</u> ¶¶ 6, 8-11, <u>Ex.</u> A.

As he has not been responsive to Avi & Co's attempts to contact him, it can be inferred that he would not willingly travel to North Carolina, especially because he is currently working elsewhere and is unlikely to be able to travel to North Carolina without being adversely impacted. <u>Id.</u> at ¶¶ 16-17.

The EDNC court would therefore be prevented from subpoenaing Mr. Cohen, a non-party witness who has first hand knowledge of key events related to this case. Id. at ¶¶ 4, 12-15, Ex. B.[2] Absent Mr. Cohen's testimony, Avi & Co would effectively be deprived of its day in court.

Thus, this Court should not exercise its discretion in favor of a transfer. See Defenshield Inc. v. First Choice Armor & Equip., No. 10-CIV.-1140, 2012 WL 1069088, at *13 (N.D.N.Y. Mar. 29, 2012) (finding that, because certain of its non-party witnesses are not subject to Rule 45 subpoena power in the Western District of North Carolina, this weighs against transfer). Notably, the witnesses Defendant have identified are still employees of ChannelAdvisor. See ECF Docket Entry 14 ¶¶ 20-23 (referring to employees and their titles in the present tense, indicating that they remain employees of ChannelAdvisor). As such, there is no concern as to the ability to have these employees testify. See Defenshield Inc., 2012 WL 1069088, at *13 (noting that employees of the parties will be available in any venue by virtue of the employment relationship and thus a subpoena is not required under those circumstances). Courts routinely engage in an analysis concerning the availability of non-party witnesses and whether they fall within the subpoena power to determine whether this important factor weights in favor or against transfer. In Enthone Inc. v. Moses Lake Industries, Inc., the court found that a single former employee identified as a critical witness would not be able to have his testimony compelled in the Eastern District of Washington ("EDWA"), but that the Rule 45 subpoena power would extend to him in the Northern District of New York ("NDNY"), where he resided. See No.: 1:13-CIV.-1054 (TJM) (RFT), 2014 WL 12587065, at *6–7 (N.D.N.Y. Apr. 10, 2014).

---

[2] ChannelAdvisor castigates Avi & Co for "using and enjoying" its services "for over a year" while ignoring the numerous complaints and failures of ChannelAdvisor exemplified in these e-mails, which are admissible as business records. See U.S. v. Stein, No. 20-CIV.-4716 (LJL), 2007 WL 3009650, at *1 (S.D.N.Y. Oct. 15, 2007) (holding that emails may be admitted as business records if "regularity of making such records and of the business activity" is shown).

Even though the Plaintiff failed to establish that this and other witnesses have stated they would not appear voluntarily, the Court nonetheless held that it could not ignore that the cost and inconvenience for these nonparty witnesses will be substantial. Id.  In balancing these arguments as to this factor, among others, the Enthone court denied the motion to transfer venue from the NDNY to the EDWA.   Id.

In another case, Bennett v. Sterling Planet, Inc., the court there engaged in a similar analysis:

> [I]t appears that multiple critical witnesses from multiple different companies would fall outside of the court's power to compel testimony *if the action was transferred*. However, *if the action remained in New York, [a party] would only have two individuals outside of the sphere of compelled testimony*, …. Accordingly, this factor weighs against transfer to Georgia.

See No. 09-CV-1176 (GLS) (DRH), 2010 WL 11566003, at *7–8 (N.D.N.Y. Mar. 22, 2010); see also Computer Express Intern., Ltd., Digital Data Devices, Inc., No. 01-CIV.-4801, 2001 WL 1776162, at *9 (E.D.N.Y. Dec. 21, 2001) ("Thus, none of the non-party witnesses can be compelled to appear in Idaho either for a deposition or for trial in this matter, because each appears to reside more than 100 miles from Idaho. The non-party witnesses located in New York and New Jersey, however, can be so compelled. Accordingly, on balance, this factor slightly favors retaining the action in New York").  This Court should engage in the same analysis and exercise its discretion against transferring this case to the EDNC, where that court would have zero subpoena power over Mr. Cohen.  It bears emphasis that Defendant recognizes this as an important factor, and has not identified any non-party witnesses that cannot be compelled to testify in New York. See ECF Docket Entry 16 at 24 ("the availability of compulsory process is a neutral factor because ChannelAdvisor is not aware of any non-party witnesses who can be compelled to one jurisdiction, but not to the other").

Indeed, because "convenience of both the party and non-party witnesses is probably the single-most important factor in the analysis of whether transfer should be granted," the inability to compel Mr. Cohen to appear in the EDNC is worthy of great weight. See ESPN, Inc. v. Quiksilver, Inc., 581 F. Supp. 2d 542, 547 (S.D.N.Y. 2008) (quoting Fuji Photo Film Co., Ltd. v. Lexar Media, Inc., 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006)).

For this analysis, the Court must consider "the materiality, nature, and quality of each witness, not merely the number of witnesses in each district." See Indian Harbor Ins. Co. v. Factory Mut. Ins. Co., 419 F. Supp. 2d at 404 (quotations omitted).

In this case, the materiality of Mr. Cohen's testimony is great because he has first-hand knowledge of the events that transpired between the parties and is the only non-party witness identified as a former employee who cannot be compelled to appear in the EDNC.

Moreover, Avi & Co is prepared to ease any burden ChannelAdvisor would face in having its employees testify in the SDNY.

For depositions, Avi & Co agrees to conduct them remotely to the extent any witness would be burdened traveling to New York.

Similarly, and to the extent this Court permits it, Avi & Co is amenable to having ChannelAdvisor witnesses appear remotely to testify at trial.[3]

In addition, Defendant's arguments concerning the *locus* of operative facts occurring in North Carolina is unavailing.

---

[3] Plaintiff respectfully rejects the contention that ChannelAdvisor's employees are the "most central witnesses." See ECF Docket Entry 16 at 25. As set forth herein, these employees remain under the control of ChannelAdvisor and can be compelled to testify in either forum; as such, the most central witness is Mr. Cohen, who cannot be compelled to appear in the EDNC.

There was only one contact in North Carolina which occurred at the behest of the Defendant, while Defendant routinely availed itself of the State of New York in locating, marketing, and serving Avi & Co in the State of New York.[4]  "In a contract case, the *locus* of operative facts is determined by the location where the contract was negotiated or executed, where the contract was to be performed, and where the alleged breach occurred." See Everlast World's Boxing Headquarters Corp. v. Ringside, Inc., 928 F. Supp. 2d 735, 745 (S.D.N.Y. 2013). When determining the *locus* of operative fact under 28 U.S.C. § 1404, "a court may determine that there are several *loci* of operative facts." Id. (internal quotation marks omitted).

Here, the contract was executed in New York by Mr. Cohen, as every single one of the five (5) agreements Defendant presents were electronically signed.  See ECF Docket Entries 14-1, 14-2, 14-3, 14-6, and 14-7.  Moreover, the e-mails Mr. Cohen sent complaining about the fact that ChannelAdvisor's product and services were also sent from New York.  See Ali Decl. ¶¶ 14-15, Ex. B.  In that regard, the minimal contacts in North Carolina are inconsequential given the fact that the parties utilized the internet and e-mail to conduct business together.  See, e.g., Rossi v. Ferring Pharm., No. 3:15-CV-01367 (VLB), 2016 WL 593440, at *6 (D. Conn. Feb. 12, 2016) (*locus* of operative facts lied in the geographic area serviced by sales representative where the events leading to the termination occurred, not location of plaintiff's home office or the employer's headquarters); see also Student Advantage, Inc. v. Int'l Student Exch. Cards, Inc., No. No. 00-CIV.-1971 (AGS), 2000 WL 1290585, at *7 (S.D.N.Y. Sept. 13, 2000) ("Here, the allegation is

---

[4] Many courts consider the *locus* of operative facts to be a "primary factor in determining a § 1404(a) motion." See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. St. Paul Fire & Marine Ins. Co., No. 12-CIV-1250 (PKC) (RCE), 2012 WL 1829589, at *4 (S.D.N.Y. May 11, 2012) (quoting Mitsui Marine & Fire Ins. Co. v. Nankai Travel Int'l Co., 245 F. Supp. 2d 523, 525-36 (S.D.N.Y. 2003)). Courts interpret the *locus* of operative facts as "the place where events and actors material to proving liability are located." Id. (quoting Amardeep Garments Indus., Pvt. Ltd. v. Cathay Bank, No. 10-CIV.-2429 (BSJ), 2011 WL 1226255, at *3 (S.D.N.Y. Mar. 23, 2011)).

that [the defendant] makes false statements and competes unfairly in selling its discount cards in this District via the internet and through businesses located here. The *locus* of operative facts is thus in this District, even if [the defendant's] principal place of business is elsewhere or [it] sells its discount cards elsewhere").

Finally, it bears mentioning that ChannelAdvisor sought out Avi & Co as a client and purposely availed itself of the State of New York to obtain customers there.  Notably, every contract or agreement signed by Avi & Co was electronically signed, giving rise to the inference that Mr. Cohen signed them "at home" in the State of New York.  Thus, this Court should consider that ChannelAdvisor availed itself of this forum in making its determination.  See Republic of Guatemala v. IC Power Asia Dev. Ltd., No. 1:22-CV-00394 (CM), 2022 WL 3139949, at *7 (S.D.N.Y. Aug. 5, 2022) (in analyzing personal jurisdiction, "ICPA purposefully availed itself of the privilege of doing business in New York by entering into a deal in New York – with more than one New York player, including Citigroup New York and financial and legal advisors in New York – to acquire the Distributors").

For the foregoing reasons, while Avi & Co does not argue that the forum selection clause: (i) is invalid; (ii) was not reasonably communicated to Avi & Co; (iii) is "mandatory," or (iv) covers Plaintiff's claims, it respectfully submits that it has made a sufficiently strong showing that enforcing the forum selection clause would be unreasonable and unjust.

Accordingly, because transferring venue would effectively deprive Avi & Co of its day in court by preventing it from having any subpoena power over Mr. Cohen, a crucial witness in this case, and because ChannelAdvisor does not suffer the same prejudice by remaining in the SDNY, this Court should decline to transfer venue.

12

## II.      THE MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM MUST BE DENIED

Defendant also seeks dismissal of all Plaintiff's claims except its breach of contract and breach of express warranty claims.  In addition, with respect to the two claims it does not seek dismissal of, ChannelAdvisor seeks dismissal of the demand for damages.

### A.      Plaintiff States Claims for Violations of the General Business Law[5]

A plaintiff challenging an act or practice under GBL § 349 must show that the act or practice was misleading in a material respect and consumer injury or harm to the public interest even for claims brought by a commercial claimant. See Nomination Di Antonio E Paolo Gensini S.N.C. v. H.E.R. Accessories Ltd., 2009 WL 4857605, at *7 (S.D.N.Y. Dec. 14, 2009).  To successfully assert a claim under the GBL § 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." See Koch v. Acker, Merrall & Condit Co., 18 N.Y.3d 940, 941 (2012) (internal quotation marks and citations omitted).  Thus, if a plaintiff does not "plead and prove injury to the public generally, [rather than] just to himself, then he cannot benefit from the consumer protection law found in Section 349." See Clayton v. Katz, No. 10-CIV.-5755, 2012 WL 4378035, at *5 (S.D.N.Y. Sep. 25, 2012) (internal quotation marks and citation omitted) (alteration in original).

---

[5] "Section 349 [of the GBL] prohibits 'deceptive acts or practices in the conduct of any business, trade[,] or commerce,' whereas [§] 350 prohibits 'false advertising in the conduct of any business, trade[,] or commerce.' " See Wynn v. Topco Assocs., LLC, No. 19-CIV.-11104, 2021 WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021) (alterations omitted) (quoting GBL §§ 349, 350). "'The standard for recovery under ...§ 350, while specific to false advertising, is otherwise identical to [§] 349,' and therefore the Court will merge its analysis of the two claims." See Cosgrove v. Oregon Chai, Inc., 520 F. Supp. 3d 562, 575 (S.D.N.Y. 2021) (citation omitted) (quoting Goshen v. Mut. Life Ins. Co. of N.Y., 98 N.Y.2d 314, n.1 (2002)); see also Barreto v. Westbrae Nat., Inc., 518 F. Supp. 3d 795, 802 (S.D.N.Y. 2021) (same); Duran v. Henkel of Am., Inc., 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) (noting that "courts have found that the scope of § 350 is as broad as that of § 349 ... and that its essential elements are the same" (alteration in original) (citation omitted)).

"Under Section 349(a), the phrase 'deceptive acts or practices' is limited to actual misrepresentations (or omissions), made to consumers, in New York." See Lenard v. Design Studio, 889 F. Supp. 2d 518, 530 (S.D.N.Y. 2012) (citing Goshen, 98 N.Y.2d at 325).

Here, there can be no question that Defendant's conduct gives rise to liability under the GBL.[6] This is because the complaint reveals that ChannelAdvisor's product and service failed to properly work with respect to the pricing and availability of items placed on various online marketplaces. See ECF Docket Entry 12 at ¶¶ 18, 23-25 (alleging pricing was inaccurate and that availability or descriptions of items listed on multiple marketplaces was not updated following a sale).

Thus, consumers who utilized any marketplace on which Avi & Co's products were placed were injured due to incorrectly priced and/or unavailable items as a result of Defendant's conduct despite ChannelAdvisor's advertisements claiming that their product seamlessly connected multiple marketplaces in a single platform.

This is sufficient to state a claim under the GBL. See Weight Watchers Int'l, Inc. v. Stouffer Corp., 744 F.Supp. 1259, 1285 (S.D.N.Y. 1990) (finding that "the false advertising involving diet and food that [the defendant] allegedly conducted clearly would involve a [sufficient] public harm if proved."); see also Construction Tech., Inc. v. Lockformer Co., Inc., 704 F. Supp. 1212, 1222–23 (S.D.N.Y. 1989) (sustaining a claim under § 349 for "false comparative advertising, a matter certainly affecting the public at large").

---

[6] Defendant claims there is no allegation that any consumer was deceived in New York. Plaintiff respectfully submits that this can be inferred from the pleadings, but is prepared to amend its complaint to make this allegation to the extent this Court finds merit in Defendant's argument.

In an analogous case, a court found that found that a plaintiff sufficiently pled consumer oriented conduct to survive a motion to dismiss, as there was "no doubt that a program offered to consumers via 'television advertisements and other methods' is consumer oriented." See M.V.B. Collision Inc. v. State Farm Mut. Automobile Ins. Co., No. 19-CIV.-1883(JS) (ARL), 2020 WL 830829, at *2 (E.D.N.Y. Feb. 20, 2020).   Here, the product and service Defendant offers is similar; it seeks to use its single unified platform to place the same item on multiple online marketplaces simultaneously.   In that regard, its "program" is effectively offered to consumers via various online marketplaces.   Thus, Defendant has engaged in consumer-oriented conduct and there exists injury to the public warranting relief under the GBL.

### B.   The Liability Limitation Provision is Unenforceable as Unconscionable

"[S]ole remedy clauses excluding consequential damages are enforceable unless they are unconscionable." See Barrie House Coffee Co. v. Teampac, LLC, No. 13-CIV.-8230 (VB), 2016 WL 3645199, at *12 (S.D.N.Y. June 30, 2016) (citing N.Y. U.C.C. § 2-719(3) ("Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable.")). However, such a limitation is not enforceable if "circumstances cause an exclusive or limited remedy to fail of its essential purpose." See N.Y. U.C.C. § 2-719(2). A limited remedy fails of its essential purpose "if the circumstances existing at the time of the agreement have changed so that enforcement of the limited remedy would essentially leave plaintiff with no remedy at all." See Maltz v. Union Carbide Chems. & Plastics Co., 992 F. Supp. 286, 304 (S.D.N.Y. 1998) (internal quotation marks omitted).  Generally, the question of whether a limited remedy fails of its essential purpose "is a question of fact for the jury and one necessarily to be resolved upon proof of the circumstances occurring after the contract is formed." See Cayuga Harvester, Inc. v. Allis-Chalmers Corp., 465 N.Y.S.2d 606, 611 (4th Dept. 1983).

15

Here, Avi & Co repeatedly complained to ChannelAdvisor concerning the failures of its product to work as advertised to no avail.  <u>See</u> ECF Docket Entry 12 ¶ 26; <u>see</u> <u>also</u> <u>Ali</u> <u>Decl.</u> <u>Ex.</u> B.  Under these circumstances, refunding the money Avi & Co paid, by itself, is therefore an insufficient remedy.  <u>See</u> <u>Waverly Props., LLC v. KMG Waverly, LLC</u>, 824 F. Supp. 2d 547, 558 (S.D.N.Y. 2011) ("A seller's inability to effect a successful repair or replacement after numerous attempts may demonstrate such a failure of the restricted remedy's essential purpose").

Moreover, because Plaintiff alleges that Defendant engaged in fraud when making representations concerning its product and services, Defendant's bad faith serves as a basis for an exception to the enforceability of the limited liability provision.  <u>See</u> <u>McNally Wellman Co. v.</u> <u>New York State Electric & Gas Corp.</u>, 63 F.3d 1198, n. 9 (2d Cir. 1995) (concluding that "[t]here is some support for [the defendant's] contention that bad faith is an exception to the enforceability of a consequential damages exclusion under section 2–719(3)," but declining to "resolve the source or viability of the bad faith exception" because the defendant had failed to raise a genuine issue of material fact as to plaintiff's bad faith "under any theory").

Accordingly, the limited liability provision must be deemed unenforceable.

### C.    The Disclaimer of Implied Warranties is Unenforceable

The Uniform Commercial Code requires conspicuous text to waive implied warranties but does not specify the methods for providing conspicuous text; conspicuousness is as a reasonable person would find the text.  <u>See</u> <u>Spinal Techs., LLC v. Mazor Robotics Inc.</u>, No. 21-CIV.-883S, 2022 WL 3867742, at *6 (W.D.N.Y. Aug. 30, 2022).   Here, the disclaimer of warranties is buried in the middle of the Master Services Agreement ("MSA"), which – while publicly available – is not attached to any of the agreements signed by Avi & Co, and is instead incorporated by reference. <u>See</u> ECF Docket Entry 14-3 at 6.   It is apparent that the disclaimer here is not conspicuous.

First, it is not the only completely capitalized text on the page.  Second, the subject headings for §§ 8.0 and 9.0 of the MSA are similarly bolded and capitalized despite the fact they do not pertain to the disclaimer of warranties.  Third, the size of the font in the very small text is the same across the entire page.  Fourth, the disclaimer's location in the middle of the sixth of eight pages and nowhere near the signature line deprives it of any conspicuousness.  Bearing this in mind, no reasonable person reviewing the MSA would fathom to notice this disclaimer.  Cf. NY Drilling, Inc. v. TJM, Inc. LLC, 573 F. Supp. 3d 854, 859-61 (E.D.N.Y. 2021) (concluding that disclaimer of warranties was valid where disclaimer's text was "in all capital letters and ... clearly and explicitly disclaim[ed] the warranties of fitness and merchantability" and where disclaimer was "set off in its own discrete paragraph, in a font and type size that differ[ed] from the text surrounding it").

The disclaimer here, while capitalized (like another provision on the same page), was not written in a font and type size that differed from the surrounding text.  As such, it is unenforceable.  Moreover, the MSA contains no language preceding the signature block that directs the reader to the disclaimers after them; in fact, there's no signature block in the MSA at all! This is in contrast to other cases finding that a disclaimer is valid where it contains such a cross-reference. See, e.g., Martino v. MarineMax Ne., LLC, No. 17-CIV.-4708, 2018 WL 6199557, at *4 (E.D.N.Y. Nov. 28, 2018) ("Immediately above the signature line, in all capital, bolded letters so as to make it conspicuous, [was] the admonition to read the reverse side for 'important limitations of warranties.'"); see also Am. Dev. Grp., LLC v. Island Robots of Fla., No. 17-CIV.-3223, 2019 WL 5790265, at *3 (E.D.N.Y. Oct. 4, 2019), report and recommendation adopted, 2019 WL 5788319 (E.D.N.Y. Nov. 6, 2019) (limited warranty first stated on page 2 of contract, and "a lengthy full-page warranty on the last page, entitled, '... One-Year Warranty,' set[ ] out more details").

Here, instead, Defendant buried the disclaimer in a separate document that was not attached to the agreement the Plaintiff signed.  This hardly reaches the level of conspicuity required to be deemed enforceable.

Accordingly, the disclaimer must be deemed unenforceable.

### D.    Avi & Co States Claims for Negligent Misrepresentation & Fraudulent Inducement[7]

ChannelAdvisor argues that Plaintiff's fraud claims are duplicative of its breach of contract claims.  However, to maintain a claim for fraudulent inducement that does not merge with a breach of contract claim, a plaintiff must: (i) demonstrate a legal duty separate from the duty to perform under the contract; _**or**_ (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; _**or**_ (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages.  See Exch. Listing, LLC v. Inspira Techs., Ltd., No. 22-CIV.-1889 (KPF), 2023 WL 2403223, at *14 (S.D.N.Y. Mar. 8, 2023).  Here, Plaintiff respectfully submits that the third exception applies, as Avi & Co seeks damages due to Defendant's wholesale failure to provide a properly working product and service which deprived Plaintiff of profit.  See Ali Decl. Ex. B at 15-17.

Moreover, "claim for fraudulent inducement is separate and distinct from a claim for breach of contract under New York law, and a plaintiff may plead both causes of action." See Rosen v. Spanierman, 894 F.2d 28, 35 (2d Cir. 1990). Further, Rule 8(d)(3) of the Federal Rules of Civil Procedure allows a party to "state as many separate claims or defenses as it has, regardless of consistency." See Fed. R. Civ. P. 8(d)(3); see also Scalercio-Isenberg v. Goldman Sachs Mortg. Co., No. 21-CIV.-4124 (KPF), 2022 WL 3227875, at *10 (S.D.N.Y. Aug. 9, 2022) (finding that Defendant falsely promised to do something extraneous from the contract to induce Plaintiff to execute agreement).

---

[7] While Plaintiff disputes the contention that New York law applies, because North Carolina and New York law apply the same relevant principles, Avi & Co does not address this argument and relies on New York law without waiver of its rights to argue that New York law applies.

Here, Plaintiff alleges that ChannelAdvisor told Avi & Co that its product and service will "streamline sales for Plaintiff and make Plaintiff more profitable." See ECF Docket Entry 12 ¶ 70.

The parties' agreement, however, does not address this promise, and only references "profit" in its liability limitation provision (which – for the reasons discussed *supra* – is unenforceable). Because the parties' agreement does not reference any promise to increase Plaintiff's profit, Avi & Co has stated a claim for fraudulent inducement based on ChannelAdvisor's statements to induce Plaintiff to sign the agreement.

In addition, Defendant's argument that the claim for fraudulent inducement fails to allege *scienter* is meritless. The complaint adequately pleads that the representations referenced above, when made, were false and that Defendants knew of their falsity. See ECF Docket Entry 12 ¶ 72.

Further, Plaintiff has sufficiently met the heightened pleading requirements under Rule 9(b), which require that Avi & Co: "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent; (2) identify the speaker; (3) state where and when the statements (or omissions) were made; and (4) explain why the statements (or omissions) are fraudulent." See Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y., 375 F.3d 168, 187 (2d Cir. 2004).

The complaint here alleges that some time prior to January 2019, at a meeting with Plaintiff in North Carolina, ChannelAdvisor made statements to Avi & Co that it would, *inter alia*, streamline sales and make Plaintiff more profitable with its single unified platform that seamlessly manages multiple online marketplaces. While the specific individual who made the statement is not identified, Plaintiff alleges that it was "Defendant."

Finally, Plaintiff explained that the product never worked as intended, such that the statements made by ChannelAdvisor were fraudulent.

These allegations are sufficient to state a fraud claim.

### E.    Avi & Co States a Claim for Unjust Enrichment

Under the parties' agreement, Avi & Co paid ChannelAdvisor 12.5% of the monthly ad spend fee in excess of $25,000.00 together with an upfront nonrefundable monthly service fee in the amount of $4,100.00 or $8,475.00.  See ECF Docket Entry 14-1 at 2 §§ 4(a) and (b); see also ECF Docket Entry 14-2 at 3 ¶ 4(b).

However, as set forth in the complaint, Defendant failed to perform. "The elements of unjust enrichment are that the defendants were enriched, at the plaintiff's expense, and that it is against equity and good conscience to permit the defendants to retain what is sought to be recovered …. The essence of unjust enrichment is that one party has received money or a benefit at the expense of another."  See County of Nassau v. Expedia, Inc., 120 A.D.3d 1178, 1180 (2d Dept 2014) (internal quotation marks and citations omitted). It is a "quasi-contract theory of recovery, and 'is an obligation imposed by equity to prevent injustice, the absence of an actual agreement between the parties concerned.'" See IDT Corp v. Morgan Stanley Dean Witter & Co., 12 N.Y.3d 132, 142 (2009).

Avi & Co alleges unjust enrichment in the alternative to its breach of contract claim. See Fed. R. Civ. P. 8(d)(3).  The elements of an unjust enrichment claim are, very clearly, alleged in the Complaint. That claim repeats and reiterates all preceding allegations, but it is based primarily on Defendant's actions in failing to deliver the promised product and service while collecting a monthly service fee. In the event it were found that Defendant's actions did not constitute a breach of contract, it enriched itself, at Plaintiff's expense, by failing to perform services and receiving payments to which it was not entitled as a result – and, as a matter of equity, it should not be permitted to retain its ill-gotten gains.

Accordingly, Defendant's motion to dismiss Plaintiff's unjust enrichment cause of action should be denied.

## III.  LEAVE TO REPLEAD SHOULD BE GRANTED IF ANY CLAIM IS DISMISSED

In the event that dismissal is granted as to any claim(s), Plaintiff respectfully seeks leave to amend, which the Rules provide shall be freely given when justice so requires.  See Fed. R. Civ. P. 15(a).  Indeed, "'[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead.'" See Cruz v. TD Bank, N.A., 742 F.3d 520, 523 (2d Cir. 2013); see also Vacold LLC v. Cerami, No. 00-CIV.-4024 (AGS), 2002 WL 193157, at *6 (S.D.N.Y. Feb. 6, 2002) (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991)); Elliot-Leach v. New York City Dep't of Educ., 201 F. Supp. 3d 238, 243 (E.D.N.Y. 2016), aff'd, 710 Fed. Appx. 449 (2d Cir. 2017).

Moreover, "[w]ithout the benefit of a ruling [from the Court], many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." See McKenzie-Morris v. V.P. Records Retail Outlet, Inc., No. 1:22-CIV.-1138 (GHW), 2022 WL 18027555, at *12 (S.D.N.Y. Dec. 30, 2022) (citing Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 190 (2d Cir. 2015)).

Accordingly, leave to replead should be granted to the extent Defendants succeed on their motion to dismiss and any deficiencies are identified by the Court.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests an Order denying Defendant's motions to transfer venue to EDNC and to dismiss for failure to state a claim upon which relief can be granted.

Dated:   Lake Success, New York
        April 6, 2023

Respectfully submitted,

**MILMAN LABUDA LAW GROUP PLLC**

By:  */s/  Emanuel Kataev, Esq.*
Emanuel Kataev, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 303-1395 (direct dial)
(516) 328-0082 (facsimile)
emanuel@mllaborlaw.com

*Attorneys for Plaintiff*
*Avi & Co NY Corp.*